STATE of Wisconsin, Plaintiff-Respondent,

v.

Esteban M. GONZALEZ, Defendant-Appellant.†

Court of Appeals

*No. 2009AP1249–CR. Submitted on briefs April 1, 2010.
—Decided July 7, 2010.*

2010 WI App 104

(Also reported in 789 N.W.2d 365.)

† Petition for review filed.

190

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Frank J. Schiro* and *Kristin A. Hodorowski* of Law Office of *Frank Joseph Schiro, Ltd.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Maura F.J. Whelan*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Esteban M. Gonzalez appeals from a judgment convicting him of exposing a child to harmful material, contrary to Wis. Stat. § 948.11(2)(a) (2005–06).[1] He also appeals from the trial court's order denying his motion for postconviction relief. Gonzalez raises seven issues on appeal. He argues: (1) the jury instructions and the trial court's denial of a theory of defense instruction violated his constitutional rights by misleading jurors; (2) the trial court erred in failing to respond to the jury's questions; (3) the trial court erred when it precluded his expert, Ronald Matthew, Ph.D., from testifying; (4) the trial court erred when it denied his pretrial motion to admit other acts of police misconduct, bias, and prejudice; (5) the evidence was insufficient to sustain his conviction because no substantial fact corroborates his statements to police; (6) he is entitled to a new trial because the real controversy was not fully tried; and (7) the trial court erred when it denied his motions to suppress and for reconsideration.

¶ 2. Upon review, we conclude: the jury instructions were not misleading; and the trial court did not err in its handling of the jury's questions, in precluding

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

Dr. Matthew from testifying, and in denying Gonzalez's motion to introduce other acts evidence. We further conclude that Gonzalez's incriminating statement was sufficiently corroborated, that he is not entitled to a new trial in the interest of justice, and that the trial court properly denied his suppression motion and his motion for reconsideration. Accordingly, we affirm.

## I. BACKGROUND.

¶ 3. Gonzalez was charged with one count of exposing a child to harmful material and one count of causing a child to view sexually explicit conduct, following an April 24, 2006 incident where he allegedly viewed a pornographic video and masturbated while his three-and-one-half-year-old-daughter, A.G., watched. The jury convicted Gonzalez of exposing a child to harmful material but acquitted him of causing a child to view sexually explicit conduct. The court imposed and stayed a sentence of eighteen months of initial confinement and twenty-four months of extended supervision. In addition, the court imposed a three-year term of probation, with nine months in the House of Correction as a condition.

¶ 4. Gonzalez subsequently filed a motion for a new trial, which was denied without a hearing. He now appeals. We will discuss additional facts in the context of the various issues raised by Gonzalez.

## II. ANALYSIS.

*A. Jury instructions.*

■

¶ 5. Gonzalez challenges the jury instructions in his case. He argues that the instructions violated his due process rights because they were confusing and misleading. He further argues that he was prejudiced

when the trial court refused to give his theory of defense instruction.

¶ 6. The trial court's instruction to the jury on the exposing a child to harmful material count set forth the elements that the State was required to prove as follows:

> Exposing a child to harmful material as defined in § 948.11(2)(a) of the criminal code of Wisconsin is committed by one who, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, and has face-to-face contact with the child before or during this sale, rental, exhibit, playing, distribution, or loan.

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt the following four elements: first, that the defendant exhibited or played harmful material to A[.]G[.] . . .

> . . . .

> The defendant had knowledge of the character and content of the material is the second element . . . .

> Third element, A[.]G[.] was under the age of 18 years. Fourth element, that the defendant had face-to-face contact with the child before or during the exhibition or the playing of the material.

This is consistent with the applicable pattern jury instruction. *See* Wis JI—Criminal 2142.[2] Gonzalez,

---

[2] In relevant part, the pattern jury instruction reads:

**Statutory Definition of the Crime**

Exposing a child to harmful material, as defined in § 948.11(2)(a) of the Criminal Code of Wisconsin, is committed by one who, with knowledge of the character and content of the

however, challenges the description of the element requiring that he "exhibited or played harmful material to A[.]G[.]" According to Gonzalez, "this statement, without clarification, invited confusion because it is satisfied by an accidental, unknowing exposure of a child to harmful material, contrary to law." We disagree.

¶ 7. Gonzalez proposed submitting the following modified instruction to the jury:

### 2142 EXPOSING A CHILD TO HARMFUL MATE-RIAL – § 948.11(2)(a) (MODIFIED)

material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration and [knows or reasonably should know that the child has not attained the age of 18 years] [has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan].

#### State's Burden of Proof

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present.

#### ELEMENTS OF THE CRIME THAT THE STATE MUST PROVE.

1. The defendant (sold) (rented) (exhibited) (played) (distributed) (loaned) harmful material to *(name of child)*.

. . . .

2. The defendant had knowledge of the character and content of the material.

. . . .

3. *(Name of child)* was under the age of 18 years.

4. The defendant . . . [had face-to-face contact with the child before or during the (sale) (rental) (exhibit) (playing) (distribution) (loan)].

Wis JI—Criminal 2142 (footnotes omitted).

## STATUTORY DEFINITION OF THE CRIME

Exposing a child to harmful material, as defined in § 948.11(2)(a) of the Criminal Code of Wisconsin, is committed by one who, with knowledge of the character and content of the material, *knowingly* sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration and [knows or reasonably should know that the child has not attained the age of 18 years] [has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan].

. . . .

## ELEMENTS OF THE CRIME
## THAT THE STATE MUST PROVE

1. The defendant *knowingly* exhibited or played harmful material to A.G.

. . . .

*"Exhibited" means that the defendant knowingly offered or presented for inspection to a specific minor or minors material defined as harmful to children. "Exhibited" requires a "knowing and affirmative act" by the defendant; which is only satisfied by "affirmative conduct" of the defendant "toward a specific minor." To find that the defendant "exhibited" harmful material, you must be satisfied beyond a reasonable doubt that the defendant targeted harmful material at a specific minor child. If you find that the defendant intended to present the adult video to any audience other than the specific minor child A.G. in this case, then you must find that he did not "exhibit" it to her, for purposes of Count 1.*

. . . .

4. The defendant had face-to-face contact with the child before or during the exhibition or playing of the material.

*"Face-to-face contact" with the child means that the*

*defendant had "personal contact" or a "personal meet-ing" with the child sufficient to allow him to determine that his audience is underage, before or during the exhibition or playing of the harmful material. "Face-to-face contact" therefore requires "some interaction be-tween the accused and the child-victim."*

(Footnotes omitted; emphasis provided by Gonzalez to show modifications to pattern instructions.)

¶ 8. In refusing to give the jury Gonzalez's modi-fied instruction incorporating definitions of the terms "exhibited" and "face-to-face contact," the trial court explained that the pattern instruction accurately states the law. The court stated:

> [W]e've got four elements, and the concept of knowing is in the context of the four elements. And I think exhibited is not such an exotic term that it needs to be described further. And, in fact, I find that the proposed description is confusing and misleading and not help-ful . . . to the issues involved here.

The court further explained that the meaning of face-to-face contact was understandable in the context of the pattern instruction.

¶ 9. "We will reverse and order a new trial '[o]nly if the jury instructions, as a whole, misled the jury or communicated an incorrect statement of law.' " *State v. Lesik,* 2010 WI App 12, ¶ 6, 322 Wis. 2d 753, 780 N.W.2d 210 (citation omitted; alteration in *Lesik*). We review *de novo* the legal question of whether a jury instruction is a correct statement of law. *Id.*

¶ 10. Whether to give a requested jury instruction is a discretionary determination left to the trial court. *State v. Coleman,* 206 Wis. 2d 199, 212, 556 N.W.2d 701

(1996). In exercising its discretion, the court is to ensure that the jury is " 'fully and fairly inform[ed] . . . of the rules of law applicable to the case and . . . assist the jury in making a reasonable analysis of the evidence.' " *Id.* (citation omitted).

¶ 11. We agree with the trial court's assessment that the pattern instruction accurately states the law. Before the jury could find Gonzalez guilty, the trial court's jury instruction required the State to prove, among other things, that Gonzalez "exhibited or played harmful material *to* A[.]G[.]" and "had face-to-face contact with the child before or during the exhibition or the playing of the material." (Emphasis added.) Encompassed within this instruction was the requirement that the jury find Gonzalez had the requisite knowledge. *See State v. Thiel*, 183 Wis. 2d 505, 535, 515 N.W.2d 847 (1994) ("[A]n individual violates [WIS. STAT. § 948.11] if he or she, aware of the nature of the material, knowingly offers or presents for inspection to a specific minor or minors material defined as harmful to children . . . ."). The "exhibited or played harmful material *to*" language of the instruction required a finding by the jury that Gonzalez acted affirmatively [i.e., knowingly]—as opposed to accidentally. (Emphasis added.) Moreover, as discussed later in this opinion, *see infra* ¶ 18, in order to prove the requisite face-to-face contact, the jury would have had to find that Gonzalez was aware of (i.e., had knowledge of) A.G.'s presence in the room.

¶ 12. Further, we agree with the trial court that the additional information set forth in Gonzalez's proposed instruction was unnecessary and confusing. First, as the State points out, language found in Gonzalez's proposed exhibited instruction (i.e., "[i]f you find that the defendant intended to present the adult

video to any audience other than the specific minor child A.G. in this case, then you must find that he did not 'exhibit' it to her, for purposes of Count 1"), which was drawn from cases distinguishing the commercial display of materials to a general consumer audience from the affirmative conduct of an individual toward a specific minor, is irrelevant in the present context. *See Thiel*, 183 Wis. 2d at 535 ("Distinct from those cases involving the commercial display of materials to a general, consumer audience, the language of [WIS. STAT. §] 948.11 focuses upon the affirmative conduct of an individual toward a specific minor or minors."). Likewise, the focus of the first sentence of Gonzalez's proposed face-to-face instruction, i.e., " '[f]ace-to-face contact' with the child means that the defendant had 'personal contact' or a 'personal meeting' with the child sufficient to allow him to determine that his audience is underage, before or during the exhibition or playing of harmful material," with its focus on a determination of the audience's age, is irrelevant here given that A.G.'s age was not at issue.

¶ 13. In addition, we are not convinced by Gonzalez's argument that from the instruction given, the jury could have determined that when he tucked A.G. into bed for the night, they had the requisite face-to-face contact such that the jury could find Gonzalez guilty of exposing her to harmful material if A.G. awoke and came out of her bedroom at some point later in the evening and saw the adult video playing. We agree with the State that the jury could not *reasonably* have concluded that such contact was sufficient for purposes of finding Gonzalez guilty.

¶ 14. Moreover, even if the trial court had instructed the jury in accordance with Gonzalez's modified instruction related to "face-to-face contact," his

concerns in this regard would not have been alleviated. Gonzalez's modified instruction provided in relevant part that " '[f]ace-to-face contact' with the child means that the defendant had 'personal contact' or a 'personal meeting' with the child sufficient to allow him to determine that his audience is underage, before or during the exhibition or playing of harmful material." If we follow Gonzalez's reasoning, even if presented with his proposed language, the jury could have concluded that the requisite face-to-face contact occurred when Gonzalez tucked A.G. into bed.

¶ 15. To the extent that the modified instructions requested by Gonzalez could be deemed appropriate, the court, nevertheless, was not required to present them to the jury given that the instruction it provided adequately set forth the applicable law. *See State v. Lenarchick*, 74 Wis. 2d 425, 455, 247 N.W.2d 80 (1976) ("If the instructions of the court adequately cover the law applicable to the facts, this court will not find error in the refusal of special instructions even though the refused instructions themselves would not be erroneous."). As discussed in the following section of this opinion, the jury had questions regarding the meaning of the terms exposure, exhibit, and face-to-face contact. We are not, however, persuaded that Gonzalez's proposed instructions would have resolved the jury's questions. Because the instructions given were appropriate, Gonzalez's due process rights were not violated.

■

¶ 16. Gonzalez also alleges error in the trial court's failure to give his requested accident theory of defense instruction.[3] Gonzalez proposed submitting an

---

[3] During the jury instruction conference, defense counsel raised the issue of the proposed accident instruction:

instruction to the jury that would explain that if the harmful material was not knowingly exhibited or played, it was an accident and he was not guilty of violating WIS. STAT. § 948.11(2)(a) (2005–06).

> I had also submitted to the Court a modification of Section 772, "accident," for Count 1 and Count 2. I know I had submitted it at a previous hearing. The DA received copies then and now, as ha[s] the Court. And I know we discussed it at that time.
>
> The Court, I think, did not feel it was appropriate. But I at least want to present to the Court again the opportunity, now that the evidence is closed, to request that instruction on the basis that I believe if there's any evidence that is produced during the course of the trial that suggests it may support an instruction for that, the defense would be entitled to it. I believe, based upon the testimony of the officers and, also, my client with regard to the concept of "accident," that the testimony would support such instruction.

The trial court commented that the issue had not been raised during the off-the-record discussion that had just taken place and asked the State what its position was on the matter. The State opposed an accident instruction, at which point the parties and the court went on to discuss other matters without ever resolving the issue of the proposed accident instruction. Defense counsel does not appear to have mentioned the issue again; consequently, the court never explained its reasoning for not providing Gonzalez's proposed accident instruction to the jury. Because the trial court failed to articulate a basis for its denial, Gonzalez argues that we should reverse and remand. We conclude, however, that raising the issue, as Gonzalez's attorney did, is not the same as objecting when the instruction was not given. *See* WIS. STAT. § 805.13(3) ("Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. *Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.*") (emphasis added). As such, the issue was not properly preserved for appeal. *See id.* Notwithstanding, we explain why an accident instruction was not warranted as if Gonzalez had preserved the issue.

¶ 17. A jury instruction on a theory of defense is warranted when four criteria are present: "(1) the defense relates to a legal theory of a defense, as opposed to an interpretation of evidence; (2) the request is timely made; (3) the defense is not adequately covered by other instructions; and (4) the defense is supported by sufficient evidence." *Coleman*, 206 Wis. 2d at 212–13 (citations omitted). Because Gonzalez's defense was adequately covered by the other instructions given to the jury, he was not entitled to an accident instruction.

¶ 18. Throughout trial, Gonzalez maintained that he did not knowingly expose A.G. to harmful material. As previously discussed, the instruction that was given required the jury to find that Gonzalez had the requisite knowledge. *See supra* ¶ 11 (The "exhibited or played harmful material *to*" language of the instruction required a finding by the jury that Gonzalez acted affirmatively [i.e., knowingly]—as opposed to accidentally. (Emphasis added.)). Furthermore, we agree with the State:

> If the jury had believed that Gonzalez did not know A.G. was in the room while the video was playing, it would have acquitted him. That is because, according to the jury instruction, it could not have concluded that Gonzalez was guilty unless he "had face-to-face contact with the child *before or during* the exhibition or playing of the material." Gonzalez could not have had this face-to-face contact if he was unaware of A.G.'s presence. Therefore, the face-to-face instruction given was sufficient to guarantee that the jury would find Gonzalez guilty only if he *knew* that A.G. was present in the room during the video's exhibition.

(Record citation omitted.) Thus, we conclude that Gonzalez's theory of defense was adequately explained through the pattern instructions on exposing a child to

harmful material. *Cf. State v. Pruitt*, 95 Wis. 2d 69, 81, 289 N.W.2d 343 (Ct. App. 1980) (concluding that the defendant's theory that he lacked the requisite intent was adequately explained to the jury through the general instructions on intent).

¶ 19. In addition, Gonzalez argues that without his requested instructions, Wis. Stat. § 948.11(2)(a) is unconstitutional as applied to him. He asserts: "although [§ 948.11(2)(a)] requires the State [to] prove the defendant's knowledge of the victim's age, it does not clearly require the State to prove the defendant's knowledge of the underage victim's presence during the exhibition or presentation of harmful materials." (Emphasis omitted.) As explained in the preceding paragraph, the instruction requiring the State to prove Gonzalez exhibited or played harmful material *to* A.G. and further requiring the State to prove Gonzalez had face-to-face contact with A.G. ensured that the jury would find Gonzalez guilty only if he acted affirmatively and knew that A.G. was present in the room. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989) ("We presume that the jury follows the instructions given to it."). Accordingly, Gonzalez's unconstitutional-as-applied argument fails.

## B. Handling of jury's questions.

█

¶ 20. Gonzalez further contends that the trial court erred in its handling of the jury's questions during deliberations. The facts relevant to this claim are that at 10:53 a.m., after approximately one hour of deliberating,[4] the jury asked the following three questions:

---

[4] At 10:28 a.m., the jury asked for copies of two exhibits. It is unclear whether Gonzalez is challenging the trial court's

Q3: What do we do about hostility between jurors→aggressive behavior, while we deliberate?

Q4: Clarify word of exposure for us.

Q5: Clarify statement 'the defendant exhibited or played, harmful material *To* A[.G.]'—what does *to* say?

(Formatting altered.) The court neither responded to the questions posed nor did it immediately notify counsel that the jury had questions. According to Gonzalez, the court first advised counsel telephonically at 1:30 p.m., following the noon recess, that the jury had questions.[5]

¶ 21. With counsel present in court, the trial court relayed that upon receiving the question on hostility between jurors, the bailiffs provided the jury with lunch and took the jurors on a walk. The court then waited to see how the jury would proceed and was advised that the jury had asked the bailiffs a couple of times when it would get an answer to its questions. While the attorneys were in court discussing how to resolve the questions, the jury posed two additional questions relevant to Gonzalez's appeal:

Q7[:] Please define face-to-face contact with the child

—proximity?? eye to eye? in room?

decision to give the jury the requested exhibits without notice to counsel. As the State points out, the court's decision was based on a prior agreement that enabled the court to do so, and, accordingly, was not erroneous. As such, we do not address the court's response to these requests further.

[5] The State notes that Gonzalez did not provide a record cite to support this fact; however, it does not appear to contest that this is what transpired. We acknowledge that this is not optimal jury management.

Q8[:] Same question: on meaning of count 1, part 1 'exhibited or played harmful material to A[.]G[.][']

—need more definition behind exhibited

—need more definition behind played

—need more definition for the entire statement.

(Formatting altered.) Upon receiving these questions, the attorneys continued to argue regarding the appropriate response. While they were doing so, the court was notified that the jury had reached a verdict.[6] Consequently, the court determined that the jury's questions were moot.

¶ 22. According to Gonzalez, the trial court "erroneously exercised its discretion by effectually refusing clarification of 'exhibited or played to,' 'exposure,' and 'face-to-face contact,' " as those terms were used in the jury instructions. In addition, he claims:

> The court violated Gonzalez's constitutional right to a fair trial and to be present with counsel at a "critical stage" of trial by unilaterally electing not to answer the jury, failing to promptly alert defense counsel when the jury asked questions, and concealing or irresponsibly omitting the fact that critical questions were asked when the court contacted counsel at 12:00 [p.m., which according to Gonzalez, is the time when the court's clerk telephoned defense counsel and advised that they should take a lunch break and check in with the court telephonically, at 1:30 p.m.].

¶ 23. Gonzalez criticizes the trial court for "wait-[ing] to see" what the jury would do for over two and one-half hours before telling counsel that the jury had

---

[6] There was an approximate forty-minute interval between the time when the jury posed questions seven and eight and the time when it rendered its verdict.

questions. He relies on case law obligating the court to resolve jury questions with clarity and precision. *See Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."); *State v. Anderson*, 2006 WI 77, ¶ 109, 291 Wis. 2d 673, 717 N.W.2d 74 (explaining that trial court has a duty " 'upon receiving a question or request from the jury . . . to respond [to the inquiry] with sufficient specificity to clarify the jury's problem' ") (citation omitted; alterations in *Anderson*). The problem for Gonzalez is that his case does not involve the accuracy of the court's response to the jury's questions. Instead, at issue is whether the court is obligated to immediately notify counsel regarding jury questions and whether the court is obligated to respond to those questions within a certain timeframe. Because he has not cited any relevant legal authority to support his position in this regard, we do not consider this argument further.[7] *See Kruczek v. DWD*, 2005 WI App 12, ¶ 32, 278 Wis. 2d 563, 692 N.W.2d 286 (Ct. App. 2004) (We need not consider arguments which are unsupported by references to relevant legal authority.).

¶ 24. Gonzalez's citation to case law for the proposition that the court's communications with the jury during deliberations constitutes a critical stage of trial

---

[7] In his reply brief, Gonzalez offers: "Common sense *alone* dictates timely response on critical issues." He goes on to re-cite *Bollenbach v. United States*, 326 U.S. 607 (1946), as support for the proposition that the court "should clear away the jury's difficulties *when* the jury makes it explicit that they have difficulties." (Underling and bolding omitted.) We do not agree with Gonzalez's interpretation of *Bollenbach* as requiring an instantaneous court response to jury questions.

during which defendants have a constitutional right to be represented by counsel likewise misses its mark given that the court never communicated with the jury. *See Anderson*, 291 Wis. 2d 673, ¶ 43 ("A substantive step in a trial for which an accused has a right to be present includes the [trial] court's communications with the jury during deliberations."). Although Gonzalez argues that the trial court's silence was a form of communication insofar as it "communicated to the jury that their substantive questions would not be answered," he has not directed us to any legal authority to support this proposition. Just as the initial jury instructions are within the trial court's discretion, so also is " '[t]he necessity for, the extent of, and the form of re-instruction' " given in response to requests or questions from the jury. *See State v. Hubbard*, 2008 WI 92, ¶ 29, 313 Wis. 2d 1, 752 N.W.2d 839 (citation omitted); *see also* Wis. Stat. § 805.13(5).[8] Given that the decision to reinstruct the jury is a discretionary one to be made by the trial court and Gonzalez has not cited any legal authority to support his position that the court's silence was during a critical stage of trial, his argument based on the court's delayed response also fails. *See Kruczek*, 278 Wis. 2d 563, ¶ 32.

■■

¶ 25. As Gonzalez points out, before a court responds to a jury's questions, parties must be given an opportunity to be heard regarding the appropriate responses. *See Rogers v. United States*, 422 U.S. 35, 38–39 (1975). This is precisely what the court was doing

---

[8] Wisconsin Stat. § 805.13(5) reads: "Reinstruction. After the jury retires, the court *may* reinstruct the jury as to all or any part of the instructions previously given, or *may* give supplementary instructions as it deems appropriate." (Emphasis added.)

when the jury arrived at its verdicts. Nothing in the sequence of events that transpired compels us to conclude that the trial court erroneously exercised its discretion.

*C. Exclusion of Dr. Matthew's testimony.*

■■

¶ 26. Gonzalez next claims that the trial court erred when it prevented the jury from hearing expert testimony regarding his psychological profile, commonly referred to as *Richard A.P.* evidence. *See State v. Richard A.P.*, 223 Wis. 2d 777, 790–92, 795, 589 N.W.2d 674 (Ct. App. 1998). Gonzalez sought to admit testimony from clinical psychologist Ronald Matthew, Ph.D., who concluded that Gonzalez did "not present with traits or qualities of known sex offenders or pedophiles." In seeking the admission of Dr. Matthew's testimony, Gonzalez argued it would demonstrate that Gonzalez did not show any evidence of a diagnosable sexual disorder and that without such evidence it was unlikely Gonzalez would molest a child.

■■ ■■

¶ 27. The admissibility of *Richard A.P.* evidence is committed to the trial court's discretion. *State v. Walters*, 2004 WI 18, ¶ 2, 269 Wis. 2d 142, 675 N.W.2d 778. In reviewing an evidentiary ruling, we will uphold the trial court's ruling "if it is supported by a logical rationale, is based on facts of record and involves no error of law." *Richard A.P.*, 223 Wis. 2d at 791.

■■

¶ 28. "*Richard A.P.* evidence, like other expert evidence, is subject to the requirements of the rules governing the admissibility of evidence. These include

not only the rules governing character evidence and expert testimony, but also WIS. STAT. § 904.03, the rule governing the exclusion of otherwise relevant evidence." *Walters*, 269 Wis. 2d 142, ¶ 25 (footnote omitted). Pursuant to § 904.03: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 29. Prior to Gonzalez's jury trial, the State filed an amended information charging Gonzalez with exposing a child to harmful material, in violation of WIS. STAT. § 948.11(2)(a) (2005–06); causing a child under the age of thirteen to view sexual activity, in violation of WIS. STAT. § 948.055(1)(2)(a) (2005–06); and first-degree sexual assault of a child, in violation of WIS. STAT. § 948.02(1) (2005–06). With the first-degree sexual assault of a child charge pending, Gonzalez filed a pretrial motion to admit Dr. Matthew's testimony. In response, the State "concede[d]" to the admission of Dr. Matthew's testimony pursuant to *Richard A.P.*

¶ 30. The prosecutor subsequently moved to dismiss the first-degree sexual assault of a child count and filed an amended information listing the two charges at issue during Gonzalez's trial, i.e., exposing a child to harmful material and causing a child under the age of thirteen to view sexual activity. During the final pretrial conference, the court and the parties returned to the issue of Dr. Matthew's testimony, with the prosecutor arguing that its admission was no longer appropriate due to the dismissal of the sexual assault charge.

¶ 31. After reconsidering the issue, the court precluded Dr. Matthew from testifying, stating:

I think [Dr. Matthew's] report is of concern. Much of that report is broad hearsay. It relates to the abuse allegation and whether or not that occurred and the nature of how this case got to the system, which we agreed in our prior hearing would not be mentioned, wouldn't get into the fact of what the child did or didn't do at the day care center, what the day care provider did or didn't report. We won't be getting into the divorce and the custody and all of those issues I am not going to be hearing.

The report contains many references to the fact that Dr. Matthew[] believes this is truthful and that is not truthful. That is concerning because obviously that is not admissible evidence.[9]

And so I look at this, I apply the standard of [Wis. Stat. §] 904.01 as well as [Wis. Stat. §] 904.03 and I am satisfied given the fact we have no allegation of child abuse, no sexual assault of a child here, given the nature of the opinion offered by Dr. Matthew[], I think it is not relevant on any issue raised in the two charges that are now before the defendant; and I'm also satisfied under [] 904.03 any slight relevance that there might be is outweighed by the substantial probability that it would confuse or mislead the Jury on important issues.

(Footnoted added.)

¶ 32. Despite Gonzalez's efforts to cast the charges against him as charges of sexual abuse of a child because they fall within Wis. Stat. ch. 948 (2005–06) ("Crimes Against Children") and because convictions require Wisconsin Sex Offender Registration, *see* Wis. Stat. §§ 973.048(2m), 301.45 (2005–06), we are not convinced. Instead, we agree with the State:

---

[9] *See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984) ("No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth.").

> It is not a crime's presence in Chapter 948 of the Criminal Code that is determinative. What is important is the evidentiary connection between the proffered evidence and the elements of the crime charged . . . . The harmful exposure count did not require proof of the fact that Gonzalez had any sexual interest in children, or that he was likely to assault or molest them for his own pleasure. Therefore Dr. Matthews' [sic] testimony that he lacked such characteristics was not relevant to the harmful exposure count, because there was no fact at issue that the testimony would have made more or less probable.

(Citations omitted.)

¶ 33. We agree with the trial court that Dr. Matthew's testimony became irrelevant once the first-degree sexual assault of a child charge was dismissed. The trial court identified the correct standard and reached reasonable conclusions on the probative value of the evidence and the potential for jury confusion. *See Walters*, 269 Wis. 2d 142, ¶¶ 38–40. Accordingly, the record supports the trial court's exercise of discretion in excluding Dr. Matthew's testimony.[10]

## D. Denial of Gonzalez's motion to introduce other acts evidence.

¶ 34. Gonzalez also asserts that the trial court erroneously denied his pretrial motion to admit other acts of police misconduct, bias, and prejudice and the expert testimony of Henry Welch, Ph.D., P.E. According to Gonzalez, detectives planted images of child pornography on his laptop computer, which was seized pursuant to a warrant.

---

[10] As such, we need not address the other bases supporting the exclusion of Dr. Matthew's testimony set forth by the trial court.

¶ 35. The relevant facts are that on May 12, 2006, police executed a search warrant authorizing them to seize Gonzalez's laptop computer in order to search for evidence of physical abuse of A.G. Based on a detective's averments that photographs of prepubescent teens in sexually explicit poses were found on the computer during that search, a warrant authorizing further search of the laptop computer for evidence of possession of child pornography was issued on May 19, 2006. A State Crime Lab report later established that the computer images, which formed the basis for the issuance of the second search warrant, were created on May 19, 2006, during the time when the computer was in the exclusive possession of the police.[11]

¶ 36. Gonzalez contends that the images "must have been downloaded as false evidence" by the police. He sought to admit evidence of these other acts at trial and the expert testimony of Dr. Welch, a professor at the Milwaukee School of Engineering, who concluded that "the copy [of the files] observed on the hard drive was place[d] on the hard drive on May 19, 2006."

¶ 37. After allowing Dr. Welch to testify during a pretrial hearing, the trial court concluded that an evidentiary hearing was warranted on Gonzalez's motion to admit Dr. Welch's testimony and other acts evidence.[12] Following judicial rotation, however, the

---

[11] According to the prosecutor, on May 19, 2006, the two already present images were downloaded onto a disk which caused a new file to be created on that date.

[12] The Honorable William W. Brash, III, presided over the initial hearing. Due to judicial rotation, the case was transferred to the Honorable Patricia D. McMahon. After hearing Dr. Welch's testimony, Judge Brash concluded that Gonzalez was entitled to an evidentiary hearing on his motion, and the case was transferred to Judge McMahon. After reading the tran-

trial court judge who took over the case denied Gonzalez's motion, stating:

> The State is not planning to use this evidence [i.e., the images] and is not seeking to introduce this evidence in this case.
>
> That is why I say this is an odd other acts evidence because the defense is seeking to introduce this evidence which introduces the images which introduces this whole side issue . . . . I think that brings it up, it raises a whole separate trial. I think it causes confusion.
>
> But it also comes back to the testimony of Dr. Welch, and I read his testimony very carefully and I'm satisfied that his testimony is not sufficient to support this motion.
>
> He's not a forensic expert. He didn't examine this computer. His testimony was not sufficient for this Court to rely on in making a ruling that would allow evidence to come in that ultimately would be prejudicial to the defendant even if the defendant wants it.

¶ 38. Gonzalez relies on *State v. Missouri*, 2006 WI App 74, 291 Wis. 2d 466, 714 N.W.2d 595, to support his argument that the trial court erred when it denied his motion to admit other acts evidence. In *Missouri*, we

---

script of Dr. Welch's testimony, learning that the State did not intend to present evidence related to the images, and listening to arguments, Judge McMahon denied Gonzalez's motion.

Gonzalez writes: "Judge McMahon essentially overruled Judge Brash, a fellow circuit court judge of equal jurisdiction, in an egregious, erroneous exercise of discretion." As support, he offers only a fleeting reference to a violation of his Fifth and Sixth Amendment due process rights. We will not consider this conclusory and undeveloped argument. *See State v. Butler*, 2009 WI App 52, ¶ 17, 317 Wis. 2d 515, 768 N.W.2d 46.

concluded that other acts evidence that a police officer had previously mistreated witnesses and planted evidence under circumstances similar to those alleged by the defendant was relevant and admissible. *Id.*, ¶¶ 21–22, 24. We are unconvinced that this case is analogous to *Missouri* given that Gonzalez does not represent that the detectives who allegedly planted the images on Gonzalez's computer were previously involved in similar incidents. Instead, we conclude that the trial court properly denied Gonzalez's motion based on its determination that Dr. Welch's testimony was insufficient.

¶ 39. Trial courts are vested with discretion when it comes to admitting an expert witness's opinion testimony. *Parker v. Wisconsin Patients Comp. Fund*, 2009 WI App 42, ¶ 28, 317 Wis. 2d 460, 767 N.W.2d 272. "Under Wis. Stat. § 907.02, a person may give an opinion within his or her area of expertise as long as the witness is qualified as an expert by knowledge, skill, experience, training, or education." *Parker*, 317 Wis. 2d 460, ¶ 28 (internal quotation marks omitted). "Whether a witness is qualified to provide expert testimony is a preliminary question of fact for the judge to determine under Wis. Stat. § 901.04." *Parker*, 317 Wis. 2d 460, ¶ 28.

¶ 40. Gonzalez sought to introduce Dr. Welch's testimony as to the creation dates of the images to establish that the detectives manufactured false evidence. However, Dr. Welch testified that he did not examine Gonzalez's computer and admitted that he had neither experience in forensic analysis nor training in the forensic examination of computers. In addition, he had never conducted a forensic examination to determine if changes had been made or created to conceal

evidence. Against this backdrop, we conclude that the trial court acted within its discretion when it found that Dr. Welch's testimony was insufficient to support Gonzalez's motion.

*E. Corroboration of Gonzalez's statements.*

¶ 41. According to Gonzalez, the State's case was based solely on his statements to the police, which were not corroborated by substantial facts. Gonzalez acknowledges that in addition to his statements, the pornographic video he was convicted of exposing A.G. to was presented as evidence during trial. He argues, however, that the video's mere existence and his ownership of it, do not constitute substantial facts sufficient to corroborate his alleged statements. We disagree.

¶ 42. "The corroboration rule is a common-law standard. Determining if the facts fulfill a common-law standard presents a question of law. We view the facts in evidence in a light most favorable to the jury's verdict." *State v. Bannister*, 2007 WI 86, ¶ 22, 302 Wis. 2d 158, 734 N.W.2d 892 (citations omitted).

¶ 43. Pursuant to the corroboration rule, a conviction cannot stand on the defendant's confession alone. *Id.*, ¶ 23. Instead, the State must corroborate " 'any significant fact.' " *Id.*, ¶ 26. The corroboration rule test has been explained as follows:

> All the elements of the crime do not have to be proved independently of an accused's confession; however, there must be some corroboration of the confes-

216

sion in order to support a conviction. Such corroboration is required in order to produce a confidence in the truth of the confession. The corroboration, however, can be far less than is necessary to establish the crime independently of the confession. If there is corroboration of *any* significant fact, that is sufficient under the Wisconsin test.

*Id.* (citation omitted; emphasis added).

¶ 44. We agree with the State that the significant fact test in *Bannister* was satisfied by the pornographic video, which, in both his trial testimony and in his statements to the police, Gonzalez conceded he masturbated to while watching. Gonzalez further acknowledged that A.G. was in the house at the time. A detective testified that Gonzalez told him A.G. came into the room while the video was on and was able to view the television.

¶ 45. Gonzalez asserts that "absolutely no evidence supports the essential element that A[.G.] actually 'viewed' harmful material." As the State points out, *Bannister* rejected the defendant's argument that a significant fact required "that the right or proper fact within the confession be corroborated." *See id.*, ¶ 37. *Bannister* held: "Requiring that specific aspects of the confession be corroborated, would require this court to abandon its test and adopt the one adopted in other jurisdictions. This court has repeatedly rejected the approaches of other jurisdictions when it comes to the corroboration rule." *Id.* Furthermore, while Gonzalez discredits what he describes as "unsubstantiated, unsupported, [and] *untrue* police testimony," we leave such credibility determinations to the jury. *See State v. Norman,* 2003 WI 72, ¶ 68, 262 Wis. 2d 506, 664 N.W.2d 97 ("The jury is the ultimate arbiter of a witness's credibility.").

¶ 46. The State presented evidence that Gonzalez owned a pornographic video. This fact was significant because it gave confidence that Gonzalez exposed A.G. to harmful material. Accordingly, the State satisfied the corroboration rule.

*F. New trial in the interest of justice.*

¶ 47. Alternatively, Gonzalez seeks a new trial under Wis. Stat. § 752.35, which permits us to grant relief if we are convinced "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Gonzalez invokes the first basis for relief, claiming that the real controversy was not fully tried.

¶ 48. We may reverse on the basis that the real controversy was not fully tried in two separate contexts:

> when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried.

*State v. Smalley,* 2007 WI App 219, ¶ 7, 305 Wis. 2d 709, 741 N.W.2d 286. We are reluctant to grant new trials in the interest of justice and exercise our discretion to do so " 'only in exceptional cases.' " *See State v. Armstrong,* 2005 WI 119, ¶ 114, 283 Wis. 2d 639, 700 N.W.2d 98 (citation omitted).

¶ 49. Gonzalez argues that he is entitled to a new trial in the interest of justice because the trial court "excluded virtually all character and reputation evi-

218

dence, although directly relevant to Gonzalez's credibility"; "excluded Gonzalez's offer to take a polygraph test, although relevant as consciousness of innocence"; and "showed a pornographic movie to the jury." (Emphasis omitted.) We address each of his contentions in turn.

### i. Character evidence.

■

¶ 50. The trial court did not permit Gonzalez to call three character witnesses: his mother, Olga Gonzalez; his sister, Luciana Gonzalez;[13] and Police Officer Michael Garcia. Gonzalez submits that these witnesses would have testified regarding his character for "(1) truthfulness (offered to bolster Gonzalez's credibility as a witness in his own defense)" and "(2) for being a protective, loving father (offered to show he acted in conformity with that character trait and did not commit the charged offenses)."

¶ 51. Gonzalez's attorney represented to the trial court that Luciana Gonzalez would testify regarding Gonzalez's "honesty, truthfulness and integrity[,] that he's a protective good father," and more specifically, "to the quality of [Gonzalez's] parenting that is consistent with the parenting trait that would not be submitting this child to the pornographic video or allow her to see him masturbate intentionally." Olga Gonzalez was to testify about Gonzalez's character for truthfulness.

¶ 52. Truthful character may be supported by evidence in the form of an opinion. *See* Wis. Stat. § 906.08(1)(b); *State v. Cuyler*, 110 Wis. 2d 133, 138, 327 N.W.2d 662 (1983). However, even if we were to conclude that the trial court's decision to prevent Gonzalez's

---

[13] Luciana Gonzalez was allowed to testify during trial; however, she was precluded from testifying as to character issues.

mother and sister from testifying as to Gonzalez's truthfulness is problematic in light of § 906.08(1)(b),[14] Gonzalez has not convinced us that the exclusion of testimony from his mother and sister attesting to his truthful character—which jurors easily could have discredited based on the close familial relationship—was pivotal to his case. Because we are persuaded that the real controversy, namely, whether Gonzalez exposed a child to harmful material, was tried despite the exclusion of this character evidence, we decline Gonzalez's invitation to grant him a new trial on this basis. *See State v. Prineas*, 2009 WI App 28, ¶ 11, 316 Wis. 2d 414, 766 N.W.2d 206 ("We exercise our discretionary reversal power only sparingly.").

¶ 53. Furthermore, we conclude that Gonzalez's argument regarding the admissibility of the anticipated testimony relating to Gonzalez's parenting skills is insufficiently developed. Gonzalez argues, without analysis, that this testimony was admissible pursuant to Wis. Stat. § 904.04(1)(a).[15] This argument is insuffi-

---

[14] Wisconsin Stat. § 906.08(1)(b) provides:

(1) Opinion and reputation evidence of character. Except as provided in s. 972.11(2), the credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to the following limitations:

. . . .

(b) Except with respect to an accused who testifies in his or her own behalf, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

[15] Wisconsin Stat. § 904.04(1)(a) provides:

(1) Character evidence generally. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

220

ciently developed to merit a response. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (stating that we may decline to review an issue inadequately briefed).

■■

¶ 54. With respect to Police Officer Michael Garcia, the trial court postponed ruling on whether he would be permitted to testify as a witness, and Gonzalez never mentioned the testimony again. Given that counsel never followed up, we conclude that the issue was not raised and argued with enough prominence to allow the trial court to address the issue and make a ruling. *See Bishop v. City of Burlington*, 2001 WI App 154, ¶ 8, 246 Wis. 2d 879, 631 N.W.2d 656 ("A litigant must raise an issue with sufficient prominence such that the trial court understands that it is being called upon to make a ruling."). Accordingly, we decline to consider this argument. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980) ("[I]ssues not raised or considered in the trial court will not be considered for the first time on appeal."), *superseded on other grounds by statute*, Wis. Stat. § 895.52, *as recognized in Wilson v. Waukesha County*, 157 Wis. 2d 790, 797, 460 N.W.2d 830 (Ct. App. 1990).

### *ii. Offer to take a polygraph.*

■■

¶ 55. Next, Gonzalez contends that the trial court's exclusion of evidence related to his offer to take a polygraph test constitutes reversible error. Gonzalez points to the court's refusal during trial to allow to him to make an offer of proof on this issue.

---

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same . . . .

¶ 56. While the result of a polygraph test is inadmissible in Wisconsin, " 'an offer to take a polygraph test is relevant to an assessment of the offeror's credibility and may be admissible for that purpose.' " *State v. Shomberg*, 2006 WI 9, ¶ 39, 288 Wis. 2d 1, 709 N.W.2d 370 (citation omitted). That said, "an offer is only relevant to the state of mind of a person making the offer as long as the person making the offer believes that the test or analysis is possible, accurate, and admissible." *Id.* (citation and internal quotation marks omitted).

¶ 57. The jury trial was not Gonzalez's only opportunity to submit an offer of proof; he could have done so via an affidavit when he filed his postconviction motion.[16] He did not do so. *See State v. Winters*, 2009 WI App 48, ¶ 22, 317 Wis. 2d 401, 766 N.W.2d 754 (concluding the defendant could have submitted an offer of proof via an affidavit filed with his postconviction motion); Wis. Stat. § 901.03(1)(b) ("Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected; and . . . (b) . . . the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."). Instead, Gonzalez provided only the following unsubstantiated statement in his brief: "The offer of proof would have informed the court that during the investigation of the events being tried, before ever speaking with an attor-

---

[16] Moreover, he could have raised this issue prior to trial. Although Gonzalez contends that he raised this issue by way of his testimony during the hearing on his suppression motion, it is clear from the record that the trial court was not aware that it was being asked to make a ruling on the admissibility of evidence related to Gonzalez's offer to take a polygraph. *See Bishop v. City of Burlington*, 2001 WI App 154, ¶ 8, 246 Wis. 2d 879, 631 N.W.2d 656.

ney, Defendant offered to take a polygraph test to prove his innocence because Defendant believed that the test or analysis was possible, accurate and admissible." This one sentence offered by Gonzalez's attorney is insufficient for us to conclude on appeal whether the trial court's exclusion of evidence related to his offer to take a polygraph test constitutes reversible error.[17] *See State v. Brown,* 2003 WI App 34, ¶ 20, 260 Wis. 2d 125, 659 N.W.2d 110.

### iii. Showing of the video.

¶ 58. Gonzalez claims that the trial court should not have shown the pornographic video to the jury. He contends that the video should have been excluded pursuant to Wis. Stat. § 904.03, as the only purpose served by showing it to the jurors "was to inflame their passions and sympathies on an uncontested matter." According to Gonzalez, the court erroneously exercised its discretion by admitting the video because there were less prejudicial methods available for establishing that it was harmful to children, such as by allowing a detective to testify to its contents, by stipulation, or by judicial notice regarding Gonzalez's concession that the video contained harmful material.

¶ 59. A trial court's decision to admit or exclude evidence is a discretionary determination and will not

---

[17] Gonzalez claimed that he testified during a suppression hearing that he offered to take a polygraph test to prove his innocence because he believed the test was possible, accurate, and admissible. The record belies this assertion as our review of the pages he cites reveals only that Gonzalez testified that he offered to take polygraph test.

be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983) (citation omitted). Evidence is not admissible unless it is relevant. *See* WIS. STAT. § 904.02. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." WIS. STAT. § 904.03.

¶ 60. The State was required to prove that the video was harmful to children. *See* WIS. STAT. § 948.11(2)(a) ("Whoever, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any *harmful* material . . . .") (emphasis added); WIS JI—CRIMINAL 2142 (listing as an element: "1. The defendant (sold) (rented) (exhibited) (played) (distributed) (loaned) *harmful* material to (name of child).") (emphasis added; footnote omitted). In ruling that the video was admissible, the trial court concluded that the video had "high relevance" to the elements of the charged offenses. After balancing the dangers of showing the video against its relevance, and taking into account that the State was going to limit its showing to thirty seconds or one minute, the court deemed it admissible. The following day, defense counsel argued for a mistrial based on a number of perceived trial court errors, one of which related to the court's admission of the video. At that time, the trial court explained that although it would have preferred that the parties stipulate that the video contained harmful material, the State had a right *not* to stipulate to the harmful nature of the video because it related to an essential element in the case.

¶ 61. The State concedes that the law does not require that the video be shown to the jury to satisfy

this element. *See State v. Booker*, 2006 WI 79, ¶ 1, 292 Wis. 2d 43, 717 N.W.2d 676. Notwithstanding, Wisconsin case law makes clear that " '[e]vidence is always admissible to prove an element of the charged crime even if the defendant does not dispute it at trial.' " *State v. Lindvig*, 205 Wis. 2d 100, 108, 555 N.W.2d 197 (Ct. App. 1996) (citation omitted; alteration in *Lindvig*). Consequently, we agree with the State that "regardless of Gonzalez's willingness to stipulate, the court did not erroneously exercise its discretion in admitting the video." As such, this cannot serve as a basis for our discretionary reversal pursuant to WIS. STAT. § 752.35.

## G. Denial of Gonzalez's motions to suppress and for reconsideration.

¶ 62. As his final argument, Gonzalez asserts that the trial court erred when it denied his pretrial motions to suppress and for reconsideration.

¶ 63. The trial court conducted a *Miranda-Goodchild* hearing, at which three detectives and Gonzalez testified.[18] The facts as testified to during the hearing reveal that Gonzalez talked to police at his apartment on May 1, 2006, and that no *Miranda* warnings were given. At the end of the interview, Gonzalez agreed to go to the police station the following

---

[18] *See Miranda v. Arizona*, 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965). If the defendant moves to suppress his or her statements because of law enforcement's failure to timely warn of the risks and consequences of self-incrimination (*Miranda*), or the voluntariness of the statements (*Goodchild*), the trial court conducts an evidentiary (*Miranda-Goodchild*) hearing to determine the validity of the accused's statements and whether suppression is warranted.

day for further discussion. When Gonzalez appeared at the police station the morning of May 2, 2006, he spoke with two detectives. It was not until approximately two hours after he arrived that Gonzalez was given *Miranda* warnings. He subsequently waived his rights, made an oral statement, and wrote and signed a written statement.

¶ 64. At the conclusion of the hearing, the trial court found that Gonzalez was not in custody prior to when he received his *Miranda* warnings and that the warnings, which he subsequently received, were properly given to him. According to the trial court, Gonzalez's credibility "suffered a pretty fatal blow when he backed off his testimony" regarding the reading of the *Miranda* warnings. The court found: "There's no question—given his level of intelligence and education, there's no question he understood the rights and that he agreed to waive them. He signed that statement." The court further noted: "[Gonzalez] wrote a long statement of his own about the case without the detective standing over him. He was alone. He wrote what he wrote." The court was "satisfied . . . that there were no threats, promises, there was nothing [that] deprived of [sic] him, there was no request he made that he was denied and the defendant even agrees with that." It went on to hold that under the totality of the circumstances, the statements made by Gonzalez were voluntary.

¶ 65. Gonzalez subsequently filed a motion requesting that the trial court reconsider his suppression motion. According to Gonzalez, the court erred when it found that he had "backed off" his testimony during the suppression hearing. In denying this motion, the court reiterated its finding that Gonzalez "was less than credible throughout his testimony and among other

things it was based on his appearance, the way he responded to questions in general and inconsistencies in the answers."[19]

### i. Pre-Miranda.

¶ 66. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "statements of the defendant obtained from questions asked while in custody or otherwise deprived of his freedom of action in any significant way could not be used as evidence against him, unless preceded by the *Miranda* warnings." *State v. Clappes*, 117 Wis. 2d 277, 282, 344 N.W.2d 141 (1984) (emphasis omitted). However, *Miranda* does not require the suppression of all statements made in custody before *Miranda* warnings are given: "Volunteered statements of any kind are not barred by the Fifth Amendment." *Id.*, 384 U.S. at 478. Thus, *Miranda* does not apply to all statements resulting from police contact, but only those "statements resulting from a custodial interrogation of a defendant." *State v. Buck*, 210 Wis. 2d 115, 123, 565 N.W.2d 168 (Ct. App. 1997).

¶ 67. It is unclear whether Gonzalez seeks reversal of the trial court's ruling on his pre-*Miranda* statements. As the State points out, Gonzalez does not argue that he was in custody or otherwise deprived of his freedom of action prior to receiving his *Miranda* warnings. Because we will not develop his argument for him, we conclude that Gonzalez has not adequately presented an argument for exclusion of his pre-*Miranda* statements. *See Pettit*, 171 Wis. 2d at 647 ("[T]o decide

---

[19] In light of this statement, it is perplexing that Gonzalez argues that "[t]here is a complete absence of findings of fact upon which to base [the court's] denial" of his motion for reconsideration.

[the] issues, we would first have to develop them. We cannot serve as both advocate and judge.").

### ii. Post- Miranda.

■■■■

¶ 68. The State has the burden of proving, by a preponderance of the evidence, the sufficiency of the *Miranda* warnings and the knowing and intelligent waiver of *Miranda* rights. *State v. Santiago*, 206 Wis. 2d 3, 12, 556 N.W.2d 687 (1996). We review those determinations *de novo. See id.* at 18. The State also has the burden of proving that the defendant's statements were voluntary. *State v. Jiles*, 2003 WI 66, ¶ 26, 262 Wis. 2d 457, 663 N.W.2d 798. We review that determination without deference to the trial court as well. *See State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987). In both cases, it is the application of the constitutional standard to historical facts that is the question of law. *State v. Agnello*, 2004 WI App 2, ¶ 8, 269 Wis. 2d 260, 674 N.W.2d 594 (Ct. App. 2003). We will uphold the trial court's findings of historical or evidentiary fact unless they are clearly erroneous. *See State v. Henderson*, 2001 WI 97, ¶ 16, 245 Wis. 2d 345, 629 N.W.2d 613.

■■■■

¶ 69. Courts will look at the totality of the circumstances when making determinations as to voluntariness. *State v. Clappes*, 136 Wis. 2d 222, 236, 401 N.W.2d 759 (1987). "The ultimate determination of whether a confession is voluntary under the totality of the circumstances standard requires the court to balance the personal characteristics of the defendant against the pressures imposed upon him by police in order to induce him to respond to the questioning." *Id.*

> [C]oercive police activity is a necessary predicate to
> the finding that a confession is not voluntary within the

meaning of the Due Process Clause of the Fourteenth Amendment, but coercive activity does not, in and of itself, establish involuntariness .... [A] trial court should not undertake the balancing analysis [between personal characteristics and coercive police activity] unless some improper or coercive police conduct has occurred.

*State v. Deets*, 187 Wis. 2d 630, 635–36, 523 N.W.2d 180 (Ct. App. 1994) (citations and quotation marks omitted; first bracket in *Deets*).

¶ 70. On appeal, Gonzalez concedes that he signed the waiver of his *Miranda* rights and a written statement on May 2, 2006, but nevertheless contends that his written and oral statements were coerced. Gonzalez submits that he repeatedly denied any inappropriate behavior over the course of two days, and then, on May 2, 2006, after more than an hour of questioning, the lieutenant of detectives

came in with the heavy hand, called [him] a liar, threatened him with jail, and advised that if he admitted to his "accidental" but "knowing" acts in front of A[.G.], that they [i.e., the police] could help him, otherwise he would definitely go to jail and no jury would believe [his] version of events since the forensic video of A[.G.] was so specific, and that if he admitted to such acts, it would save his daughter the trauma of testifying in court.

Gonzalez claims that his requests to see the video of A.G. were refused, at which point, "[h]is will and resistance were ultimately broken," and relying on the officers' representations that if the acts were accidental they would not be a crime, he agreed to write a statement to that effect.

¶ 71. After reviewing the record, we independently conclude that Gonzalez's statements were voluntary. We

defer to the trial court's assessment that Gonzalez was not credible. *See Henderson*, 245 Wis. 2d 345, ¶ 16. Even if his testimony had been believed, we are not convinced that coercive police tactics were employed based on the facts he alleges. *See State v. Cydzik*, 60 Wis. 2d 683, 692, 211 N.W.2d 421 (1973) (telling defendant "cooperation would be to his benefit" did not render statement involuntary under *Miranda*); *State v. Markwardt*, 2007 WI App 242, ¶¶ 41–42, 306 Wis. 2d 420, 742 N.W.2d 546 (concluding that loud and confrontational tone of interrogation did not amount to coercive police practice); *State v. Owen*, 202 Wis. 2d 620, 642, 551 N.W.2d 50 (Ct. App. 1996) (reaching same conclusion with respect to accusation that the suspect is lying); *Deets*, 187 Wis. 2d at 637 (concluding that suggestion that unless defendant cooperated the victims would be forced to testify and would suffer great trauma did not amount to coercive conduct); *see also United States v. Mendoza*, 85 F.3d 1347, 1351 (8th Cir. 1996) (collecting cases in support of the proposition that statement that defendant would be arrested immediately if she did not cooperate was not so coercive as to render statement involuntary). Accordingly, the trial court properly denied Gonzalez's motion to suppress and subsequent motion for reconsideration.[20]

*By the Court.*—Judgment and order affirmed.

[20] The State addressed the suppression motion on which Gonzalez's subsequent reconsideration motion was based. We are not persuaded by Gonzalez's contention that the State was required to specifically address the denial of his reconsideration motion and that the failure to do so somehow amounted to a concession "of the court's reversible error."