STATE of Wisconsin, Plaintiff-Respondent,

v.

Walter T. MISSOURI, Defendant-Appellant.

Court of Appeals

*No. 2005AP1486–CR. Submitted on briefs January 31, 2006.
—Decided March 14, 2006.*

2006 WI App 74

(Also reported in 714 N.W.2d 595.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *David J. Becker*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Walter T. Missouri appeals from a judgment entered after a jury found him guilty of one count of possession of cocaine with intent to deliver and one count of resisting arrest. Missouri also appeals from an order denying his postconviction motion seeking a new trial based on newly discovered evidence. Missouri claims: (1) the trial court erroneously exercised its discretion when it denied his request to admit "other acts" evidence; and (2) the trial court erroneously exercised its discretion when it denied his postconviction motion. Because we conclude that the trial court erroneously exercised its discretion in both respects, we reverse and remand for a new trial.

## BACKGROUND

¶ 2. On January 7, 2004, Milwaukee Police Officer Jason Mucha, together with fellow officer Paul Lough, went to a residence at 2013 North 36th Street to conduct a drug investigation. They observed a male exit the rear of the residence and run toward a white four-door sedan. Officers Brad Westergard and Mucha began searching the area for the vehicle in an unmarked squad. At 6:20 p.m. they noticed a white four-door Chevy Lumina parked and running in front of 2162 North 41st Street. Missouri was seated in the front passenger seat.

¶ 3. What happened next was disputed at trial. Missouri's version of events was that his girlfriend had parked the car in front of her friend's home and had just run inside to return a video. He then noticed the police

approaching the car with their weapons drawn. He heard them say: "Don't you f'ing move or I'll shoot you in the f'ing face." Missouri stated he was then struck with a hard object in the back of the head. He leaned over and began honking the horn so that there would be witnesses. He stated that Mucha then put his pistol to Missouri's neck and said: "Let go of the wheel or I'll blow your brains through the roof." Missouri testified that he was then violently pulled from the vehicle, beaten by the police, and that while he was on the ground, they put the baggie of cocaine in his mouth.

¶ 4. Mucha offered a different account of what happened. He testified that as they approached the white vehicle, the man (later identified as Missouri) in the passenger seat ducked down under the seat. When Mucha attempted to remove Missouri from the car, Missouri moved his hands to his mouth, leaned toward the steering wheel and started honking the horn. Mucha then pulled Missouri by his feet and got him out of the car. Mucha testified that because Missouri was resisting arrest, Mucha delivered two "knee strikes" which caused Missouri to drop to the ground. Mucha then jumped on top of Missouri, and eventually sprayed him in the face with pepper spray. Thereafter, the police indicated they discovered a baggie of cocaine bindles in Missouri's mouth.

¶ 5. As a result of the incident, Missouri was charged with possession with intent to deliver and resisting an officer. Missouri pled not guilty and the case was set for a jury trial. Missouri filed a variety of pretrial motions, including a motion for a preliminary ruling as to the admissibility of testimony from Booker Scull. Scull would offer testimony that he had been mistreated by Officer Mucha on two prior occasions. Scull's affidavit averred that on June 27, 2003, while in

his home located at 2021 North 29th Street, he heard gunshots coming from Alex's Tap on 30th and Brown Streets. Scull went out onto his porch to locate his son, who he observed on the corner of 29th and Brown Streets talking to his girlfriend. Scull then told his son to go into the house so that when police came to investigate the shooting, he would not become a suspect. Scull's son and girlfriend walked into the residence as Officer Mucha arrived on the scene.

¶ 6. Mucha approached Scull and asked why his son went into the house. Scull asked Mucha what business he had at Scull's house. Mucha said: "I can come over here any time I want, nigger." Mucha then told Scull to "come here" and Scull refused to get off his porch. Mucha said: "I'll come up and arrest your ass." Scull then said he would call internal affairs. Mucha came onto the porch and grabbed Scull's arm. Scull jerked his arm away from Mucha. Mucha then grabbed Scull, hit him in the back of his head with a hard object and Scull was thrown to the ground by other officers, who had come to assist Mucha. Mucha then kicked Scull in the mouth, breaking two of his teeth. Scull was then charged with trying to disarm a police officer.

¶ 7. On December 27, 2003, Mucha was questioning Scull's son near his house. His son ran away, but his fiancé, Lillian Brooks, was standing nearby. Mucha slammed Brooks to the ground. Scull went to get his camera and walked up to take a picture of Mucha, who had his knee on Brooks. Mucha drew his gun and pointed it at Scull. Scull put his hands in the air and Mucha put his gun away. Scull then took a picture of Mucha, who still had his knee on Brooks. Scull then began walking back toward his house.

¶ 8. Mucha chased Scull and then forced him to lie down in the street. Mucha hit Scull's right arm with

his nightstick, kicked the camera out of his hands and handcuffed him. Mucha then whispered into Scull's ear: "I should have kicked all your teeth out." Mucha took Scull's camera and then arrested him for aiding in the escape of his son.

¶ 9. The trial court ruled that Scull's testimony would not be admissible. The trial court applied the three-part *State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998),[2] test to determine whether Scull's "other-acts" testimony should be admitted. The trial court found that the evidence satisfied the first and second prongs of the *Sullivan* test, but not the third. The trial court ruled:

> This is a situation in which the defendant is trying to put before the jury evidence in which it appears that Mr. Scull's behavior is inconsistent with what he would be saying in that I am informed that the defendant — I'm sorry, I am informed that Mr. Scull has pleaded guilty to one of the incidents and would have to assert the Fifth as to the other evidence. So it is highly problematic to make a determination that this is relevant.

> The state would then be forced to call an Assistant District Attorney to describe the plea that Mr. Scull entered in connection with the one incident, and of course there would be all kinds of questions raised in the trier of facts' mind with respect to the assertion of the Fifth Amendment with respect to [the] second incident.

> ... I have to decide ... whether the probative value of the evidence is substantially outweighed by the

---

[2] The three-part test asks first whether the other-acts evidence is offered for an acceptable purpose; second, whether the proffered evidence is relevant; and third, whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice. *See State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998).

danger of unfair prejudice, confusion of the issues, or misleading the jury. And certainly that is the case here. For me to permit evidence of Officer Mucha's behavior with respect to Mr. Scull, before — to put that before this jury would mislead the jury and confuse the issues and be unfair to the state.

If I were to permit the defense to go in this way, then all of that would — all that that would do is inspire people to make claims of beatings by the police. That is inflammatory, and without anything to really back this up other than this allegation, I have no choice but to deny the request for the admission of this evidence. Mr. Scull will not be permitted to testify.

¶ 10. The case proceeded to trial and the jury found Missouri guilty of both offenses. Judgment was entered. He filed a postconviction motion, seeking a new trial based on newly discovered evidence. He submitted evidence from four other unrelated individuals who attested to similar encounters with Officer Mucha. Those four individuals and a summary of their incidents include: (1) Ricky Green, who was stopped by Officers Mucha, Westergard and Awadallah, asserts that the officers hit him in the stomach and then claimed that Green had thrown down some cocaine; (2) Sylvester Hamilton claims he was arrested by Officers Mucha and Dineen and severely beaten; (3) James Murry asserts that he was arrested by Mucha allegedly on a false charge of possession of cocaine with intent to deliver; and (4) Lemar Barnes asserts that he was arrested by Mucha and several other officers, who claimed to have found a bindle of cocaine on the ground where Barnes was standing. He states that he was physically abused by the officers.

¶ 11. The trial court ruled that this newly submitted evidence satisfied the first four factors of the

five-factor test for newly discovered evidence. *See State v. Coogan*, 154 Wis. 2d 387, 394–95, 453 N.W.2d 186 (Ct. App. 1990).[3] The trial court ruled, however, that the fifth factor—that there exists a reasonable probability of a different result at a new trial—was not satisfied. The trial court reasoned that there was no possibility of a different result at a new trial because none of these four incidents would be admitted into evidence. Similar to the Scull ruling, the trial court concluded that these four "other-acts" incidents would not satisfy the third prong of the *Sullivan* test. As a result, the trial court entered an order denying Missouri's postconviction motion. Missouri now appeals.

## DISCUSSION

██

¶ 12. Both issues in this case involve whether the trial court erroneously exercised its discretion by concluding that the evidence would not be admissible. In reviewing evidentiary issues, our review is whether the trial court applied the correct law to the pertinent facts and reached a reasonable conclusion. *See State v. Smith*, 2002 WI App 118, ¶¶ 7–8, 254 Wis. 2d 654, 648 N.W.2d 15. We conclude that the trial court did not apply the correct law and therefore did not reach a reasonable conclusion. Thus, we reverse the judgment and order and remand for a new trial.

---

[3] The five parts of the newly discovered evidenced test are: "(1) the evidence was discovered after trial; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue; (4) the evidence is not merely cumulative to the evidence presented at trial; and (5) a reasonable probability exists of a different result in a new trial." *State v. Coogan*, 154 Wis. 2d 387, 394–95, 453 N.W.2d 186 (Ct. App. 1990).

*A. Scull's Testimony.*

¶ 13. The first question involves the trial court's ruling on the Scull testimony. The trial court ruled that Scull's testimony was inadmissible based on the third *Sullivan* factor—that the probative value of the testimony was substantially outweighed by undue prejudice. *See Sullivan*, 216 Wis. 2d at 773; Wis. Stat. § 904.03 (2003–04).[4] We disagree.

¶ 14. Wisconsin Stat. § 904.04(1) provides that character evidence "is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except: . . . (c) *Character of witness*. Evidence of the character of a witness, as provided in ss. 906.07, 906.08 and 906.09." The evidence at issue here addresses the character of a witness, Officer Mucha, and specifically, whether he is being truthful or untruthful in denying physical abuse and planting evidence. Based on § 904.04, Scull's testimony could not be admitted for the purpose of showing that because Mucha mistreated Scull, he also must have mistreated Missouri. However, § 904.04 does allow character evidence to be admitted for other purposes.

¶ 15. Specifically, "other-acts" character evidence can be admitted to show "proof of motive . . . intent . . . or absence of mistake or accident." Wis. Stat. § 904.04(2). It can also be admitted to show the bias or prejudice of a witness. *State v. Williamson*, 84 Wis. 2d 370, 383, 267 N.W.2d 337 (1978). Here, the defense wanted to introduce Scull's testimony to show that Mucha had a motive to lie and cover up what he had

---

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

done, and that this was intentional, not the result of mistake or accident. The Scull evidence would also be used to show that Mucha intended to frame Missouri for a crime, which occurred because Mucha's prejudice toward black people causes him to commit physical assaults and use excessive force. We conclude that the Scull evidence satisfied the "other purpose" prong of the *Sullivan* test.

¶ 16. We also conclude that the Scull evidence was relevant to a consequential fact. Here, the Scull testimony is very similar in substance and time to what occurred in the instant case. The Scull testimony would be very relevant in questioning Mucha's credibility and truthfulness. It would be relevant to show that Mucha had a motive to lie about what happened between him and Missouri, that Mucha had the intent to frame Missouri for a crime he did not commit, and that Mucha's conduct was not an accident. Thus, we also conclude that the second prong of the *Sullivan* test is satisfied.

██

¶ 17. The final prong addresses whether the probative value of the Scull testimony would be substantially outweighed by the danger of unfair prejudice, waste of time or confusing the jury. *See* Wis. Stat. § 904.03. Would it unfairly prejudice the State to allow Scull's testimony? We think not. The State, like this court, operates with the priority of searching for truth and justice. Our system depends upon all witnesses being forthright and truthful and taking seriously the oath to tell the truth when testifying in a legal proceeding. Evidence that challenges the credibility of a State's witness promotes that goal and cannot be summarily dismissed as overly prejudicial. When the jury hears all of the witnesses who can provide relevant information

on the issues, it can make a fair assessment as to who is being truthful. This is of particular importance in a case that relies primarily on whether the officer or the defendant is telling the truth. It is not appropriate for this court, nor was it appropriate for the trial court, to assume that the defendant was lying and the officer was telling the truth. Resolution of credibility issues and questions of fact must be determined by the factfinder.

¶ 18. Admitting Scull's testimony will undoubtedly cause the State to proffer additional witnesses in its rebuttal case. This, however, cannot constitute unfair prejudice, sufficient to override the probative value of this evidence, particularly when the Scull incidents were not remote in time.

¶ 19. The final question then is whether proffering Scull's testimony would confuse the jury or waste time. Under the circumstances presented here, we conclude that neither would occur. Scull's offering is straightforward and uncomplicated. Cautionary instructions utilized in every other-acts case could be given to ensure that Scull's testimony is used for a proper purpose.

¶ 20. Moreover, WIS. STAT. § 906.08(2) provides:

SPECIFIC INSTANCES OF CONDUCT. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility . . . may not be proved by extrinsic evidence. They may, however . . . if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination . . . .

■

¶ 21. Based on this statute, at a minimum, defense counsel should have been able to ask Mucha about the Scull incident during cross-examination.

The Scull incident was not remote in time, and was probative of whether Mucha was being truthful or untruthful.

¶ 22. In addition, "[t]he bias or prejudice of a witness is not a collateral issue and extrinsic evidence may be used to prove that a witness has a motive to testify falsely." *Williamson*, 84 Wis. 2d at 383. The defense here argued that Mucha had a bias or prejudice against black people who were not immediately compliant with his orders. Thus, that bias/prejudice can be explored through extrinsic evidence to attack Mucha's character. As long as this evidence is direct and positive and not remote and uncertain, it may be received to discredit the testimony of the witness. *See id.* at 383 n.1. Here, we are convinced that the Scull testimony satisfies these requisites. Thus, we conclude that the trial court erroneously exercised its discretion in refusing to allow the defense to present its witnesses who would have attacked the credibility of Officer Mucha. The jury should hear the defense witnesses so that it can make a fair and informed determination as to what truly happened in this case.

*B. Four Additional Witnesses.*

¶ 23. The second issue is whether the trial court erroneously concluded that the testimony from four additional witnesses who had similar bad experiences with Officer Mucha was inadmissible.

¶ 24. For the same reasons discussed above, we conclude that the trial court erred in summarily concluding that none of these witnesses' testimony would be admissible at Missouri's trial. Again, at a minimum,

defense counsel should be allowed to cross-examine Officer Mucha about each of these four incidents. Moreover, based on *Williamson*, each of these four witnesses could be called to testify as to the bias or prejudice of Officer Mucha in order to attack Mucha's credibility.

¶ 25. This court cannot decide whether Mucha or Missouri is telling the truth. We do know that one of them is not. Given the closeness in time, the similarity of experience that these additional four witnesses had with Mucha, and the apparent lack of any connection between any of these witnesses to Missouri, we conclude that defense counsel should not be foreclosed from proffering these witnesses to attack Mucha's credibility at Missouri's trial. The defense is entitled to present its best defense. In a case like Missouri's, where the primary resolution rides on the credibility of a police officer verses the credibility of the defendant, we cannot foreclose the defense from calling the witnesses it needs to present its case. The trial court erroneously exercised its discretion in making the evidentiary determination that the testimony of these witnesses was inadmissible.[5] Accordingly, we reverse and remand this case for a new trial with directions to the trial court to permit admission of the other-acts evidence.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[5] We also conclude that the trial court's error was not harmless. There is a reasonable probability that if these witnesses testify at a new trial, the result may be different.