# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 3, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.**  **2018AP2285-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2014CF1279

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

ANTONIO SCARBROUGH,

   DEFENDANT-APPELLANT.

   APPEAL from a judgment and an order of the circuit court for Milwaukee County:  DANIEL L. KONKOL and DAVID L. BOROWSKI, Judges. *Affirmed*.

   Before Brash, P.J., Kessler and Dugan, JJ.

   **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Antonio Scarbrough appeals a judgment entered after a jury found him guilty of three felonies. He also appeals an order denying his postconviction motion. He claims that his trial counsel was ineffective for failing to present the testimony of a witness who, he believes, would have described an exculpatory statement that Scarbrough made to a third party. Alternatively, he claims that he is entitled to a new trial in the interest of justice because the jury did not hear his allegedly exculpatory statement. Because the exculpatory statement at issue would have constituted inadmissible hearsay, we reject his claims and affirm the judgment and order.

## Background

¶2 The State alleged in a criminal complaint that on March 1, 2014, at a Milwaukee duplex on South 3rd Street, Scarbrough committed three crimes, namely, first-degree reckless homicide, armed robbery as a party to a crime, and burglary by use of a dangerous weapon. The matters proceeded to a jury trial.

¶3 Donneal Bell testified that he accompanied Scarbrough to the upper unit of the duplex after agreeing to participate in a robbery. Bell said that Scarbrough seized one of the three people inside and took the person out of the unit at gunpoint. Bell went on to say that he stood guard over the people who remained in the upper unit until he heard Scarbrough shout, "[l]et's hit it." Bell and Scarbrough then fled to a waiting van where Scarbrough said that he had "fired a warning shot."

¶4 A.J. and E.D., who lived in the upper unit of the duplex, testified and described how a gunman entered their home and demanded drugs and money while a man with a hammer prowled around the apartment and took cash from

2

A.J.'s wallet. A.J. and E.D. testified that the gunman then seized their houseguest, Mario Towns, and took him from the unit.

¶5 Residents in the lower unit of the duplex testified and described how a gunman led Towns into their home at gunpoint, forced them to kneel on the floor, and demanded drugs and money. Four of the residents—D.N., S.C., and S.C.'s two children—each testified that he or she subsequently identified Scarbrough as the gunman. D.N. also testified that at some point during the home invasion, he saw Towns break free and attempt to escape, and that Scarbrough chased Towns as he ran out of the duplex. Moments later, D.N. heard a gunshot and then saw Towns on the ground several feet from the duplex.

¶6 The Milwaukee County Medical Examiner, Brian Peterson, testified that he conducted an autopsy on Towns. Peterson said that Towns received a gunshot wound to the side of his head and died as a result of that wound.

¶7 Keisha Robinson testified that she had known Bell since he was a small child and that she knew Scarbrough because he and her son, Don Robinson, became friends in approximately November 2013. She said that in early March 2014, Bell and Scarbrough stayed at her home for approximately one week. At the end of their stay, she had a conversation with Scarbrough about "things she had heard," and she asked him why he would "do this crime." She testified that in response, Scarbrough "showed no remorse and said that, yeah, I shot him, he shouldn't have ran, he tried to run." Keisha Robinson further testified that her boyfriend, Michael Palmore, heard her conversation with Scarbrough.

¶8 Scarbrough did not testify or present any witnesses on his own behalf but, through cross-examination and argument, he suggested that the State charged the wrong person when it accused him of the crimes in this case. Pointing

3

to evidence that Bell and Don Robinson had known each other for many years, Scarbrough asked the jury to conclude that Bell falsely identified Scarbrough as the gunman in order to protect Don Robinson. Scarbrough further argued that Keisha Robinson had a motive to make a false accusation against him, namely, her wish to deflect attention away from her son. The jury rejected Scarbrough's theory of the case and found him guilty as charged.

¶9 Scarbrough filed a postconviction motion alleging that his trial counsel was ineffective for failing to call Palmore as a defense witness. In support of the motion, Scarbrough attached a police report showing that Palmore spoke to police in late March 2014. According to the police report, Palmore said that approximately two or three weeks after the homicide, Scarbrough "came over to [Keisha Robinson's] house." Palmore went on to tell police that "he was present when [Scarbrough] came into [Keisha Robinson's] room and told her words to the effect of 'Momma, I didn't have anything to do with what people are saying we did on the south side.'" Scarbrough contended that if trial counsel had presented this evidence to the jury, he would likely have been acquitted.

¶10 The circuit court denied relief without a hearing, concluding that the evidence at issue was inadmissible hearsay, and trial counsel therefore was not ineffective for failing to present it. Scarbrough appeals.

## Discussion

¶11 To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that trial counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to prove one component, a court need not consider the other. *See id.* at 697. To prove deficiency, the defendant must show

that trial counsel's actions or omissions were "professionally unreasonable." *See id.* at 691. To prove prejudice, the defendant must show that trial counsel's errors "actually had an adverse effect on the defense." *See id.* at 693. Whether trial counsel's performance was deficient and whether the deficiency was prejudicial are both questions of law that we review *de novo*. *See* **State v. Johnson**, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶12 Although a defendant alleging ineffective assistance of trial counsel must seek to preserve trial counsel's testimony in a postconviction hearing, *see* **State v. Machner**, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979), the defendant is not automatically entitled to such a hearing. A circuit court must grant a hearing only if the postconviction motion contains allegations of material fact that, if true, would entitle the defendant to relief. *See* **State v. Allen**, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. This presents an additional question of law for our independent review. *See id.* If the defendant does not allege sufficient material facts that, if true, would entitle him or her to relief, if the allegations are merely conclusory, or if the record conclusively shows that the defendant is not entitled to relief, the circuit court has discretion to deny a postconviction motion without a hearing. *See id.* We review a circuit court's discretionary decisions with deference. *See id.*

¶13 Scarbrough claims his trial counsel performed deficiently because trial counsel did not call Palmore to testify that he overheard Scarbrough deny committing the crimes in this case. Scarbrough argues that the deficiency was prejudicial because the testimony would have impeached Keisha Robinson, who testified that he confessed, and would have probably led to an acquittal.

¶14     We conclude that Scarbrough's trial counsel did not perform deficiently by failing to call Palmore as a defense witness.  His proposed testimony is inadmissible hearsay, and the circuit court therefore would have excluded the testimony if Scarbrough had offered it.  *See **State v. Wheat***, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 (explaining that forgoing meritless claims is not deficient performance).

¶15     "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial[,] ... offered in evidence to prove the truth of the matter asserted."  WIS. STAT. § 908.01(3) (2017-18).[1]  The hearsay rule, codified at WIS. STAT. § 908.02, provides that hearsay testimony is inadmissible at trial unless permitted by some other rule or statute.  As relevant here, a party's own out-of-court statements are inadmissible hearsay when they are offered as evidence by that party.  *See **State v. Ziebart***, 2003 WI App 258, ¶8 n.4, 268 Wis. 2d 468, 673 N.W.2d 369.

¶16     Scarbrough contends that the hearsay rule would not have barred Palmore's testimony because the purpose of the testimony would not have been to prove its truth.  *See* WIS. STAT. § 908.01(3).  Rather, he says, the testimony would have served to impeach Keisha Robinson, either by contradicting her, or by showing her bias, or both.  We disagree.

¶17     We first address Scarbrough's contention that Palmore's testimony would have been admissible to impeach Robinson by contradicting her description of Scarbrough's confession.  Normally, "[o]ne cannot impeach a witness by

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

6

hearsay statements." ***Felde v. Kohnke***, 50 Wis. 2d 168, 186, 184 N.W.2d 433 (1971). Scarbrough does not acknowledge ***Felde*** but seeks to avoid its mandate by pointing to ***Upton v. Tatro***, 68 Wis. 2d 562, 574, 229 N.W.2d 691 (1975). ***Upton*** is inapplicable here. That case permits hearsay testimony of a declarant's prior inconsistent statement to impeach the same declarant who made the inconsistent statement. *See **id.*** at 570-71, 573-74. "Extrajudicial statements of a hearsay nature may be used to impeach a witness on the theory that one who gives testimony inconsistent with his prior statements is subject to having the truthfulness of both statements attacked." ***Shoemaker v. Marc's Big Boy***, 51 Wis. 2d 611, 618, 187 N.W.2d 815 (1971). Scarbrough, however, is not arguing that his trial counsel should have impeached Keisha Robinson's trial testimony with an inconsistent statement that Keisha Robinson made before trial. Rather, he contends that his trial counsel should have refuted Keisha Robinson's trial testimony describing his confession by presenting Scarbrough's extrajudicial statement that he "didn't have anything to do with" the crimes. In other words, Scarbrough contends that his statement should have been offered for its truth. That is "pure hearsay, not admissible under any exception to the rule." *See **id.*** Accordingly, we reject his contention.

¶18     Scarbrough next asserts that, even if his trial counsel could not have offered his extrajudicial statement to impeach Keisha Robinson by contradicting her, his trial counsel nonetheless could have offered the statement to prove her bias. He acknowledges the general rule that a witness cannot be impeached by extrinsic evidence on a collateral matter, *see **State v. Wiese***, 162 Wis. 2d 507, 514-15, 469 N.W.2d 908 (Ct. App. 1991), but he asserts that the rule does not apply

here because bias is not a collateral issue, and a party may therefore use extrinsic evidence to prove that a witness has a motive to testify falsely.[2] *See, e.g.*, **State v. Missouri**, 2006 WI App 74, ¶22, 291 Wis. 2d 466, 714 N.W.2d 595. Based on the foregoing, Scarbrough asserts that Palmore's testimony would have been admissible because "it would have been impeachment on a material issue, bias on the part of [Keisha Robinson]." Scarbrough is wrong.

¶19    Although bias is a material issue, Palmore's proposed testimony is not probative of any bias that Keisha Robinson might have. Scarbrough's alleged statement that he had "nothing to do with" the crimes in this case does not show that Keisha Robinson was vulnerable to pressure by the prosecutor or by the police, nor does the statement show that she was aligned with third parties against Scarborough. *See* **State v. Lindh**, 161 Wis. 2d 324, 354-55, 468 N.W.2d 168 (1991) (describing typical kinds of bias). Indeed, nothing in Scarbrough's alleged exculpatory statement explains why Keisha Robinson would give false testimony against him. If presented to the jury, the statement would merely show that Scarbrough made an extrajudicial statement denying that he was guilty. The hearsay rule bars Scarbrough from presenting such evidence. *See* **Ziebart**, 268 Wis. 2d 468, ¶8 n.4.

¶20    In sum, Scarbrough could not have called Palmore to testify about the out-of-court statement he allegedly heard Scarbrough make to Keisha Robinson. The statement was inadmissible hearsay as a matter of law. Accordingly, Scarbrough's trial counsel did not perform deficiently by failing to

---

[2] Extrinsic evidence in the context of impeachment is "[e]vidence admitted other than through examination of the witness whose impeachment is sought." **State v. Sonnenberg**, 117 Wis. 2d 159, 168, 344 N.W.2d 95 (1984) (citation omitted).

call Palmore as a witness. *See Wheat*, 256 Wis. 2d 270, ¶14. Because Scarbrough's postconviction motion did not satisfy the deficiency prong of the *Strickland* analysis as a matter of law, Scarbrough failed to show that his trial counsel was ineffective. *See id.*, 466 U.S. at 697. The circuit court therefore properly denied Scarbrough's postconviction motion without a hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

¶21 Scarbrough concludes his arguments in this court with a request for a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. Under that statute, we may order a new trial if we conclude either that the real controversy has not been fully tried or that justice has probably miscarried. *See State v. Jones*, 2010 WI App 133, ¶43, 329 Wis. 2d 498, 791 N.W.2d 390. Here, Scarbrough asserts that "the real controversy has not been fully tried because the jury did not have the opportunity to hear and examine ... [Palmore's] testimony" describing Scarbrough's alleged extrajudicial exculpatory statement. As we have explained, the proposed testimony is inadmissible, and Scarbrough therefore could not present it to a jury. Accordingly, the statement's absence from the trial does not provide grounds for any relief, let alone discretionary reversal. For all the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT RULE 809.23(1)(b)5.