COURT OF APPEALS
DECISION
DATED AND FILED

March 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1197-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CM282

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DENNIS C. STRONG, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Reversed and cause remanded for further proceedings.*

¶1 GILL, J.[1] Dennis Strong, Jr., appeals a judgment, entered following a jury trial, convicting him of two counts of battery, as a repeater, and one count of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

disorderly conduct, also as a repeater. At trial, Strong attempted to question the alleged victim, Tara,[2] about a prior false report that she had made to the police in a different case. However, Tara denied making a false report. At that point, pursuant to WIS. STAT. § 906.08(2), Strong should have been permitted to use an audio recording of Tara's testimony in a prior proceeding, during which Tara admitted to making a false report to the police, to impeach her trial testimony that she did not make a false report. Strong was unable to do so, however, because the circuit court had already ruled, prior to trial, that the audio recording was irrelevant and could not be introduced at trial.

¶2      We agree with Strong that the circuit court erroneously exercised its discretion by preventing him from introducing the audio recording of Tara's prior testimony at trial. After Tara falsely testified that she had not previously made a false report to the police, Strong should have been able to confront Tara with the audio recording in an attempt to force her to admit that she had, in fact, made a false report. The audio recording could be used for that purpose under WIS. STAT. § 906.08(2)—a statute the court failed to apply in its pretrial ruling. As such, the court erred by preventing Strong from using the audio recording at trial. Moreover, the State has failed to establish that the court's error with respect to the audio recording was harmless. We therefore reverse Strong's judgment of conviction and remand for a new trial.[3]

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we refer to the victim using a pseudonym.

[3] Strong also argues on appeal that he is entitled to a new trial in the interest of justice because the State improperly introduced other-acts evidence and elicited testimony from a detective that impermissibly vouched for the victim's credibility. Strong further argues that the State made improper comments during its closing argument, which amounted to plain error.

(continued)

## BACKGROUND

¶3    The charges against Strong arose after police were dispatched to Tara's residence on March 21, 2017, following a 911 call made by Tara's son. When the officers arrived at Tara's residence, she reported that Strong had been acting strange and had started "flicking her in the face and head without her consent." Tara also told the officers that Strong "grabbed her around the neck without her consent" and "hit her in the face or head," causing her pain.

¶4    Based on Tara's allegations, Strong was charged with two counts of misdemeanor battery and one count of disorderly conduct, each with a repeater enhancer. Strong entered not-guilty pleas to all counts, and the matter was scheduled for a jury trial.

¶5    Strong, who was self-represented, filed a motion before trial seeking to compel the State to produce a police report regarding an incident that took place on November 19, 2016. During a hearing in July 2017, the State agreed to provide Strong with a redacted version of the police report. The report states that on November 19, 2016, Tara's friend, Crystal Denton, told the police that she had been attacked by three individuals outside a bar. Denton stated that Tara "was present at the time and could confirm [that one of the individuals] was involved."

---

Because we reverse on the grounds that the circuit court erroneously excluded the audio recording in which Tara admitted making a false report to the police, we need not address Strong's remaining arguments. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive); *see also Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

Tara later told the police, however, that "she was not present and [Denton] had asked her to lie to police on her behalf."

¶6     During a pretrial hearing in December 2017, Strong sought permission to introduce an audio recording of Tara's testimony during revocation proceedings against Strong in a different case.   In her testimony during the revocation proceedings, Tara admitted that she had initially made a false report to the police regarding the November 19, 2016 incident.  Specifically, Tara testified that: (1) Denton had handed her a phone; (2) she did not know that there was an officer on the phone; (3) she was put into a situation in which she felt pressured; (4) Denton was standing next to her mouthing what she should say; (5) she gave the officer a statement based on what Denton was telling her; and (6) she immediately called the officer back and told the officer that her previous statement was not true and that she was not present during the November 19 incident.

¶7     Strong argued that evidence regarding Tara's prior false report to the police was admissible because it related to Tara's "truthfulness."  The circuit court rejected Strong's argument, concluding the audio recording of Tara's prior testimony was inadmissible because the false report did not involve Strong and any evidence regarding the false report was therefore irrelevant.[4]

¶8     At Strong's jury trial, Tara testified that she and Strong had been friends for over nine years.  She stated that on March 21, 2017, she had invited Strong and her cousin to her residence, but Strong later arrived at her residence

---

[4] The circuit court also ruled that Denton and Nathan Williams, another individual involved in the November 19, 2016 incident, would not be permitted to testify at trial.  Strong does not specifically challenge those rulings on appeal, and we therefore do not address them further.

alone. Initially, Strong "seemed fine," and he and Tara sat in the kitchen talking and drinking.

¶9    While everything appeared to be "normal" at first, Tara testified that at some point Strong "just seemed to snap" and started "flicking" her temples. According to Tara, Strong "looked angry" and "progressively kept getting more and more aggressive." Tara testified that Strong pulled her hair and pushed her head against a wall, at one point putting his hand around her throat to hold her up against the wall. Strong "kept saying over and over again, 'What are you going to do for redemption from the streets?'"

¶10    Tara testified that she then went inside a bathroom with her three-year-old daughter and locked the door so that Strong could not get inside. However, after Strong's voice became calm again, Tara let him into the bathroom. Once inside, Strong had an "instant personality change" and went "right back to being angry" and flicking Tara's temples. Tara testified that Strong also hit her face with an open hand and continued repeatedly asking her, "What are you going to do to earn redemption from the streets?" Tara then took her three-year-old daughter upstairs, where her other children were located. At Tara's request, her teenage son called 911.

¶11    On cross-examination, Strong attempted to ask Tara about her false report regarding the November 19, 2016 incident, and the following exchange occurred:

> Q.    Wasn't there a point, though, that you had said that you had called the police back and said that everything you said was not true?
>
> A.    No.

5

Q.  What was that that you had said that you called the police back and said everything was not true?  I thought that was—

A.  Never, I never said that.

Q.  Was that you that had said that or [Denton]?  I'm not sure.

¶12     At that point, the State objected, without providing any grounds for its objection, and Tara interjected, "That's a totally different case."  The circuit court sustained the State's objection, explaining that Strong was not permitted to "state any other person's testimony."  Strong then asked the court for "permission to impeach" Tara, and the court responded, "Ask a question, and we'll see if it's relevant."  The court also instructed the jury to "disregard Mr. Strong's last question."  Strong attempted to ask the court for "guidance," but the court refused to provide any guidance and instead directed Strong to ask his next question.  Strong then changed topics and questioned Tara about the March 21, 2017 incident that formed the basis for the charges against him.

¶13     In addition to Tara's testimony, the State presented testimony at trial from:  the dispatcher who answered the 911 call from Tara's teenage son; the son who made the 911 call; two officers who responded to the 911 call; and Tara's teenage daughter.  Critically, none of these witnesses were able to directly corroborate Tara's testimony that Strong had flicked her temples, pulled her hair, pushed her head against a wall, put his hand around her throat, or hit her face.  While Tara's teenage son and daughter were present in the home during the time period in question, neither of them testified that they witnessed any of the alleged physical contact between Strong and Tara.  In fact, Tara's daughter expressly testified that she did not see Strong pull Tara's hair, push Tara up against a wall, or "flick" Tara.

¶14     The jury ultimately found Strong guilty of all three of the charges against him. After the circuit court imposed sentence, Strong—now represented by counsel—filed a postconviction motion seeking a new trial on various grounds. As relevant to this appeal, Strong argued that the court had erroneously exercised its discretion by preventing him from introducing evidence that Tara had "lied to police in the recent past." Strong argued that evidence was relevant to Tara's credibility and was admissible under WIS. STAT. § 906.08(2).

¶15     Following a nonevidentiary hearing, the circuit court denied Strong's motion for a new trial. During its oral ruling, the court explained that it had excluded the evidence regarding Tara's false report to the police because it was "extrinsic evidence, not relevant evidence," which Strong was trying to introduce to attack Tara's credibility. The court reasoned:

> The statute that defense counsel cites, [WIS. STAT.] § 906.08(2), talks about specific instances of conduct with regards to a witness's character for truthfulness, and then goes on to say that if there are instances that are not remote in time, the court has discretion to allow that in. There's no real guidance in the statute as to what "remote in time" would be. In the Court's opinion, a five months earlier incident that really is not relevant to what the trial was about, one specific incident, this really doesn't go towards a witness's character for truthfulness, I don't believe there are going to be any witnesses coming forth saying that the victim has a reputation for untruthfulness, my understanding is [Strong] just wanted the specific instance in, and I found it to be irrelevant, and I still would find it to be irrelevant, even considering [§] 906.08(2).

¶16     Although the circuit court denied Strong's motion for a new trial, it granted his alternative motion for resentencing. The court subsequently held a resentencing hearing, during which it imposed consecutive and concurrent sentences totaling two years' initial confinement and two years' extended supervision. Strong now appeals.

7

**DISCUSSION**

¶17     A circuit court's decision to admit or exclude evidence is reviewed for an erroneous exercise of discretion. *State v. Hunt*, 2014 WI 102, ¶20, 360 Wis. 2d 576, 851 N.W.2d 434. A court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record. *Id.*

¶18     Strong argues that the circuit court erroneously exercised its discretion by failing to apply the correct legal standard when determining the admissibility of the audio recording in which Tara admitted making a false report to the police about the November 19, 2016 incident. We agree. When addressing the admissibility of that evidence before trial, the court reasoned that Tara's false report about the prior incident was not relevant because the prior incident did not involve Strong. As Strong correctly notes, however, the admissibility of evidence regarding Tara's false report is governed by WIS. STAT. § 906.08(2), which provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime or an adjudication of delinquency as provided in [WIS. STAT. §] 906.09, may not be proved by extrinsic evidence. They may, however, subject to [WIS. STAT. §] 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

¶19     Under WIS. STAT. § 906.08(2), Strong was permitted to cross-examine Tara regarding her prior false report for the purpose of attacking

8

her character for truthfulness.[5] Evidence regarding the false report was probative of Tara's untruthfulness, as required by § 906.08(2), because it showed that Tara had previously lied to the police.[6]

---

[5] Citing **State v. Eugenio**, 219 Wis. 2d 391, 404, 579 N.W.2d 642 (1998), the State argues that "allegations of a single instance of falsehood cannot imply a character for untruthfulness." This citation is inapt because **Eugenio** addressed the admissibility of evidence under WIS. STAT. § 906.08(1), which pertains to opinion and reputation evidence of a witness's character for truthfulness or untruthfulness. This case, in contrast, involves the admissibility of evidence under § 906.08(2), which expressly provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness … [may] be inquired into on cross-examination of the witness."

[6] We note that it makes no difference, for purposes of our analysis, that Tara never specifically testified as to her own character for truthfulness or untruthfulness. WISCONSIN STAT. § 906.08(2) provides that specific instances of a witness's conduct, if probative of truthfulness or untruthfulness and not remote in time, may be inquired into: (1) "on cross-examination of the witness"—i.e., on cross-examination of the same witness involved in the specific instance of conduct; or (2) "on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness"—i.e., on cross-examination of a witness who testifies regarding the character for truthfulness or untruthfulness of a different witness involved in the specific instance of conduct.

The following example is instructive:

> The specific instances of conduct may be those of the witness testifying or those of the "subject witness" where the cross-examination is of a character witness. For instance, assume [witness] A testifies that in her opinion witness B is a truthful person. On cross-examination, witness A may be asked about specific incidents in her own life which are pertinent to her character for truthfulness. The cross-examiner may also ask A about her knowledge of specific instances of lying etc. by witness B in order to test the probative value of A's opinion about B's veracity.

7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 608.2 (4th ed. 2021). Thus, although Tara did not specifically testify as to her own character for truthfulness or untruthfulness, WIS. STAT. § 906.08(2) permitted Strong to cross-examine her regarding her prior false report to the police because the false report was probative of Tara's untruthfulness and, as discussed below, was not remote in time.

¶20 Moreover, the false report was not remote in time as it occurred in November 2016, a mere four months before Tara reported the events underlying the charges in this case. During its oral ruling on Strong's postconviction motion, the circuit court noted that WIS. STAT. § 906.08(2) provides "no real guidance" as to the meaning of the phrase "remote in time." The court then suggested that Tara's false report was too remote in time to be admissible under § 906.08(2) because it occurred "five months" before Tara reported the events at issue in this case. We do not agree that the time lapse in this case, which was actually just over four months, rendered Tara's prior false report "remote in time" under § 906.08(2). We have not located any case law holding that a delay as short as four months was "remote in time" under that statute. *See, e.g.*, **State v. Sonnenberg**, 117 Wis. 2d 159, 170, 344 N.W.2d 95 (1984) (concluding incidents that occurred "over a year" after the charged conduct were remote in time under § 906.08(2)); **State v. Missouri**, 2006 WI App 74, ¶¶2, 5, 7, 21, 291 Wis. 2d 466, 714 N.W.2d 595 (concluding two incidents that occurred approximately six months and approximately two weeks, respectively, before the relevant conduct were not remote in time for purposes of § 906.08(2)).

¶21 The circuit court also concluded that evidence pertaining to Tara's prior false report was not relevant because the November 19, 2016 incident did not involve Strong. Nothing in WIS. STAT. § 906.08(2) provides that specific instances of conduct are relevant to attack the witness's character for truthfulness only when the witness's prior untruthful conduct involved the same individuals or underlying factual circumstances as the witness's trial testimony. Moreover, under WIS. STAT. § 904.01, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Evidence that Tara was willing to lie to the police about a physical altercation in November 2016 has a tendency to make it more probable that Tara lied to the police when she reported Strong's alleged conduct in March 2017. The evidence therefore relates to Tara's credibility, and our supreme court has recognized that "[a] witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01." *See* **State v. Marinez**, 2011 WI 12, ¶34, 331 Wis. 2d 568, 797 N.W.2d 399 (citation omitted).

¶22    The State contends that reversal is not warranted because, despite the circuit court's pretrial ruling excluding the audio recording, the court permitted Strong to ask Tara about the false report on cross-examination at trial. The State notes that WIS. STAT. § 906.08(2) states "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness … *may not be proved by extrinsic evidence*." (Emphasis added.) The State therefore suggests that after Strong asked Tara whether she had previously made a false report to the police, and after she denied doing so, Strong was required to "take [Tara's] answer" and could not introduce "extrinsic evidence"— i.e., the audio recording—to show that she actually had made a false report.

¶23    The State's argument misapprehends the meaning of the term "extrinsic evidence," as it is used in WIS. STAT. § 906.08(2).

> Inquiry into specific instances [of conduct under § 906.08(2)] is limited to cross-examination. Extrinsic evidence of the conduct is not permitted; the cross-examiner must take the witness's answer. *This does not preclude the impeaching party from confronting the witness with a prior statement or document … referring to the specific instance in an attempt to get the witness to "back down" and admit the impeaching fact.* If the witness finally relents and admits the fact, it is proven through the witness's testimony, not "extrinsic" evidence.

7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 608.2 (4th ed. 2021) (hereinafter, "WISCONSIN EVIDENCE") (emphasis added; footnotes omitted). Accordingly, our supreme court has characterized "extrinsic evidence" as "testimony obtained *by calling additional witnesses*, as opposed to evidence obtained by the cross-examination of a witness." *Sonnenberg*, 117 Wis. 2d at 168 (emphasis added).

¶24 Pursuant to these authorities, the audio recording of Tara's prior testimony admitting that she had made a false report to the police did not constitute "extrinsic evidence" under WIS. STAT. § 906.08(2). As such, when Tara denied on cross-examination that she had made a false report, Strong should have been permitted to use the audio recording to "attempt to get [Tara] to 'back down' and admit the impeaching fact." *See* WISCONSIN EVIDENCE § 608.2. Strong could not do so, however, because the circuit court had already ruled, prior to trial, that Strong would not be allowed to introduce the audio recording. As explained above, we conclude the court erroneously exercised its discretion in that regard. Again, once Tara denied on cross-examination that she had previously made a false report to the police, Strong should have been permitted to confront Tara with the audio recording in attempt to secure her admission that she had, in fact, made a false report.[7]

---

[7] We acknowledge that after Tara denied on cross-examination that she had made a false report to the police, Strong did not specifically argue that he should be allowed to use the audio recording to impeach Tara's testimony in that regard. However, the circuit court had already ruled, prior to trial, that the audio recording was inadmissible. Under these circumstances, we cannot fault Strong—a pro se litigant—for failing to again raise the issue during Tara's cross-examination. Moreover, we observe that the State does not develop any argument on appeal that Strong forfeited his argument regarding the audio recording by failing to adequately preserve that issue during his trial.

¶25    Even if evidence is admissible under WIS. STAT. § 906.08(2), it may nevertheless be excluded if the circuit court determines that its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *McClelland v. State*, 84 Wis. 2d 145, 156-57, 267 N.W.2d 843 (1978) (quoting WIS. STAT. § 904.03). In this case, the circuit court did not address whether the probative value of the audio recording was substantially outweighed by any of the considerations listed above. If a circuit court fails to adequately explain its reasoning in support of a discretionary decision, we may independently review the record to determine whether it provides a basis for the court's exercise of discretion. *State v. Sullivan*, 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998).

¶26    Here, the record does not support a determination that the probative value of the audio recording was substantially outweighed by the danger of unfair prejudice or by any of the other considerations set forth in WIS. STAT. § 904.03. The recording's probative value was significant. In the recording, Tara admitted under oath that she had made a false report to the police regarding a physical altercation in November 2016. The false report occurred only four months before Tara told the police about Strong's alleged conduct in this case. The fact that Tara lied to the police in November 2016 tended to make it more likely that she lied to the police about Strong's conduct. The recording was therefore highly relevant to Tara's credibility. Furthermore, Tara's credibility was a critical issue at trial, as none of the State's other witnesses could directly corroborate her allegations that

Strong had flicked her temples, pulled her hair, pushed her head against a wall, put his hand around her throat, or hit her face.[8]

¶27    On the other side of the balance, the audio recording was not unfairly prejudicial.  The recording would not have influenced the outcome of the case by improper means, appealed to the jury's sympathies, aroused its sense of horror, provoked its instinct to punish, or otherwise caused the jury to base its decision on something other than the established propositions in the case.  *See Sullivan*, 216 Wis. 2d at 789-90.  Moreover, the recording would not have raised any significant risk of confusing the issues, misleading the jury, or causing undue delay, waste of time, or needless presentation of cumulative evidence.  *See* WIS. STAT. § 904.03.  The recording contains Tara's admission, while under oath, that she lied to the police regarding the November 19, 2016 incident.  Consequently, Strong correctly notes that the recording "was not disputed evidence that would [have] require[d] a significant diversion in the case."  On this record, we cannot conclude that the recording's probative value would have been substantially outweighed by any of the considerations set forth in § 904.03.

¶28    Finally, we observe that the erroneous exclusion of evidence is subject to the harmless error rule.  *See Hunt*, 360 Wis. 2d 576, ¶26 (citing WIS.

---

[8] In a footnote, the State argues that the audio recording has "very little if any probative value as to [Tara's] character for untruthfulness."  To the contrary, the State asserts that the recording actually "shows [Tara's] character for truthfulness" because it reveals that after Tara made her initial false statement to the police, she promptly called the officer back and admitted that her initial statement was untrue.  The State is correct that a jury could interpret the recording as showing Tara's character for truthfulness.  However, a jury could also conclude, based on the recording, that Tara has a character for untruthfulness because she was willing to lie to the police in the first instance.  We agree with Strong that given the conflicting inferences that could be drawn from the recording, the jury was entitled to hear the recording and weigh its impact on Tara's credibility.

STAT. § 901.03(1)). For an error to be deemed harmless, the party that benefited from the error—here, the State—must prove beyond a reasonable doubt that the error did not contribute to the jury's verdict. *See id.* Stated differently, an error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* (citation omitted). Factors to be considered in a harmless-error analysis include: "the importance of the erroneously admitted or excluded evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case." *Id.*, ¶27. Whether a circuit court's error in excluding evidence was harmless is a question of law that we review independently. *State v. Monahan*, 2018 WI 80, ¶31, 383 Wis. 2d 100, 913 N.W.2d 894.

¶29 In this case, the State has not developed any argument that the circuit court's exclusion of the audio recording constituted harmless error. In any event, based on our review of the record, we cannot conclude that the error was harmless. As discussed above, the recording was important to Strong's case, as it tended to show that Tara was willing to lie to the police, which was relevant to Tara's credibility in this criminal proceeding. Given the nature of the State's case, which rested entirely on the jury believing Tara's testimony regarding Strong's conduct, evidence impeaching Tara's credibility was critical to Strong's defense. Furthermore, there was no other evidence corroborating the fact that Tara had made a false report to the police in November 2016, as Tara denied making a false report during her cross-examination. Under these circumstances, we cannot conclude beyond a reasonable doubt that a rational jury would have found Strong guilty absent the court's erroneous exclusion of the audio recording.

15

¶30 In summary, the circuit court erroneously exercised its discretion by excluding the audio recording in which Tara admitted making a false report to the police, and the State has failed to establish that the error was harmless. We therefore reverse Strong's judgment of conviction and the order denying his postconviction motion, and we remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.