STATE of Wisconsin, Plaintiff-Respondent,

v.

Deshawn RODGERS, Defendant-Appellant. †

Court of Appeals

*No. 95–2570–CR. Submitted on briefs May 13, 1996.—Decided June 18, 1996.*

(Also reported in 552 N.W.2d 123.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff*, assistant state public defender of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Diane M. Nicks*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Deshawn Rodgers appeals from a judgment entered after a jury found him guilty of two counts of armed robbery, party to a crime, contrary to §§ 943.32(1)(b) & (2) and 939.05, STATS. He also appeals from a postconviction order denying his motion

to modify his sentence. Rodgers claims: (1) the trial court erred in denying his motion to suppress his confession; (2) the trial court erred in excluding his expert witness; and (3) the trial court erroneously exercised its sentencing discretion. Because the trial court did not err in denying the suppression motion; because the trial court did not erroneously exercise its discretion in excluding Rodgers's expert witness; and because the trial court properly exercised its sentencing discretion, we affirm.

## I. BACKGROUND

On July 9, 1994, Rodgers was arrested at his home by police detective, William Blumenberg. As Rodgers was being led from his house, he turned to his mother and said, "You should call a lawyer for me." When Rodgers arrived at the police station, Blumenberg advised him of his *Miranda* rights.[1] Blumenberg testified at the suppression hearing regarding what happened next:

> I then told him that I was aware, because I had heard him yell to his mother, "Mom, you should call a lawyer for me," and I said, "Is that your wish now, to have a lawyer present; or do you want to talk to a lawyer?"
> And he said, "No; I want to get this over with and tell you what I know."

Rodgers proceeded to give a statement admitting his involvement in the two armed robberies. Rodgers signed the statement. Subsequently, Rodgers filed a motion *in limine* to suppress the statement. After conducting a suppression hearing, the trial court denied the motion, ruling:

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

There apparently was a request [for an attorney]; the defendant made a request to his mother as he was being taken into custody that she should call a lawyer, but the testimony here is uncontradicted that the detective questioned the defendant about that request because he was aware of that request, and asked whether that was his request now. The defendant said, no; he wanted to talk about it.

And I am satisfied that therefore the requirements of the *Miranda* rule have been complied with, and the statement will be permitted. The motion then to suppress is denied.

The trial court also granted the State's request to exclude the testimony of Rodgers's expert witness, Jerry Grayson. Grayson was a videotape enhancement expert. Both armed robberies were videotaped by the stores' security cameras. Rodgers was identified on the videotape as the individual with the number "53" on his shirt. In an offer of proof, Grayson indicated that he could testify regarding the height of the individuals on the videotape, relative to a fixed object, such as a doorway. The trial court ruled that the jurors did not need expert testimony on this issue because such a determination was within their common knowledge, there was insufficient foundation for the testimony, and it would lead to jury speculation and confusion.

The case proceeded to trial and the jury returned a guilty verdict. Rodgers was sentenced to ten years in prison on the first count and twenty years in prison on the second, to run consecutively. Rodgers filed a motion to modify the sentence, alleging that the trial court improperly linked his lack of remorse to its consideration of the need to protect the public. The trial court denied the motion. Rodgers now appeals.

## II. DISCUSSION

*A. Request for Counsel.*

Rodgers contends that the trial court erred when it denied his motion to suppress his statements. He claims the statements should have been suppressed because he made a clear and unambiguous request for counsel, and instead of honoring that request, the police talked him into waiving his asserted right to counsel. We reject Rodgers's contention.

█

In reviewing a trial court's decision on a suppression motion, we are bound by the court's findings of historical fact unless they are clearly erroneous. *State v. Kramar*, 149 Wis. 2d 767, 784, 440 N.W.2d 317, 324 (1989). Whether a defendant's *Miranda* rights were violated, however, is a constitutional fact that we review independent of the trial court's determination. *Kramar*, 149 Wis. 2d at 784, 440 N.W.2d at 324.

█

It is undisputed that Rodgers said to his mother as he was being led from the house, "You should call a lawyer for me." The question is whether this statement constitutes a clear invocation of his right to counsel. If a suspect clearly asserts his right to counsel during a custodial interrogation, law enforcement officers are required to immediately cease all questioning. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). However, if the request for counsel is ambiguous or equivocal so that a "reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," the police officer is not required to cease questioning. *Davis v. United States*, 512 U.S. ——, 114 S. Ct. 2350, 2355 (1994).

We conclude from our review of the events at issue in the instant case that Rodgers's statement was not a clear invocation of his right to have counsel present for questioning. We base this conclusion on several factors. First, Rodgers made the request to his mother and did not make any request for an attorney directly to any police officer. The Wisconsin Supreme Court recently held that "[s]imply retaining counsel is not an unequivocal statement that the suspect wishes to deal with the police only in the presence of counsel." *State v. Coerper*, 199 Wis. 2d 216, 225, 544 N.W.2d 423, 427 (1996). It logically follows that Rodgers's statement to his mother as he was being led out of his house to "call a lawyer" does not satisfy the unequivocal personal invocation standard outlined in the case law.

Second, even though this statement was made to Rodgers's mother, the police did not simply ignore it. Blumenberg gave Rodgers an opportunity to assert his right to have counsel present for questioning once he was brought to the police station. He specifically asked whether Rodgers wanted a lawyer present or whether he wanted to talk to a lawyer. Rodgers said no, that he wanted to give a statement. Further, Rodgers made no reference to or request for an attorney during the interrogation, which was several hours long.

Accordingly, Rodgers's statement to his mother did not constitute a clear invocation of the right to have counsel present for police questioning. Therefore, the trial court did not err in denying his motion to suppress and the statement was properly admitted.

*B. Exclusion of Expert Witness.*

Rodgers also claims that the trial court erred in excluding the testimony of his expert witness. We disagree.

■■■■

The decision whether to admit or exclude proffered expert testimony is a matter of trial court discretion. *State v. Friedrich*, 135 Wis. 2d 1, 15, 398 N.W.2d 763, 769 (1987). Our review of the trial court's decision is limited to determining whether the trial court erroneously exercised its discretion. *State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74, 79-80, *cert. denied,* 510 U.S. 845 (1993). We will not find an erroneous exercise of discretion if the trial court examined the relevant facts, applied a proper legal standard, and used a rational process to reach a reasonable decision. *Id.*

In an offer of proof, Rodgers's expert witness testified that he had examined the videotape and would testify regarding relative heights of the individuals on the tape. Rodgers's counsel indicated that the sole purpose in offering this testimony was to assist the jury in determining whether the individual on the videotape wearing the "53" shirt was Rodgers. In deciding to exclude the testimony of this witness, the trial court noted that the expert witness was unable to enhance the videotape to make the images clearer. The trial court's decision to exclude the testimony explained the limited purpose of the expert's testimony:

> [T]he expert has been working and proposes to offer the opinion concerning measurements and so forth and offer an opinion concerning rules to be applied for the jury so that they can, in viewing the tape, determine if Number 53, the person wearing Number 53, is or is not the defendant in this case.

The trial court reasoned:

> As we have discussed on the record, it's clear that you don't need an expert to tell the jury what they are seeing. It's not necessary for the jury to be told, "This is a tape."

The trial court also expressed concerns regarding the foundation for this expert's testimony:

> He did state he had no prior experience to this case in scaling sizes in videotape and no training with respect to such scaling on videotape. . . .
>
> There is some concern about the level of that expertise. I am concerned with respect to the fact that there is no evidence that this witness has . . . seen the camera as it was at the time of the taking of the tape.
>
> . . . There is no evidence that the angle of the camera, the type of the camera was the same . . . .

The trial court was also concerned that this expert's testimony would "lead to some side issues; jury speculation, jury confusion rather than making clearer the issues to the trier of fact." In addition, the trial court noted that the videotape was not being used as the sole identification of the defendant. There were eyewitness identifications of Rodgers.

The trial court concluded that there was an insufficient foundation to allow the testimony, that the witness did not qualify as an expert on the precise issue in this case, that the testimony would not assist or aid the jury, and that the testimony would lead to jury speculation and confusion.

Based on this review, we cannot say that the trial court's decision to exclude the testimony was an erroneous exercise of discretion. The trial court examined the relevant facts, applied the proper law and reached

a reasonable determination. *See State v. Mordica*, 168 Wis. 2d 593, 602, 484 N.W.2d 352, 356 (Ct. App. 1992).

*C. Sentencing.*

Finally, Rodgers claims the trial court erroneously exercised its sentencing discretion. Specifically, Rodgers contends the trial court erred by linking his lack of remorse with the need to protect the public. Again, we reject Rodgers's contention.

Sentencing decisions are left to the discretion of the trial court. *See State v. Thompson*, 172 Wis. 2d 257, 263, 493 N.W.2d 729, 732 (Ct. App. 1992). We will not disturb these decisions absent an erroneous exercise of discretion. *Id.* In order to properly exercise its sentencing discretion, the trial court must consider the three primary factors: the gravity of the offense, the character of the offender, and the need to protect the public. *State v. Echols*, 175 Wis. 2d 653, 682, 499 N.W.2d 631, 640, *cert. denied*, 510 U.S. 889 (1993). As part of these primary factors the trial court may also consider: the vicious and aggravated nature of the crime; the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; *the defendant's remorse*, repentance, and cooperativeness; the defendant's need for rehabilitative control; the right of the public; and the length of pretrial detention. *Id.* at 682, 499 N.W.2d at 640-41.

Our review of the sentencing transcript confirms that the trial court examined each of the primary factors. The trial court addressed the gravity of the

93

offense, noting the tragic consequences for the victims. It addressed Rodgers's character, observing that he had been incarcerated previously and had a pattern for blaming others for his criminal behavior. Finally, the trial court addressed the need to protect the public from Rodgers's immature, impulsive, volatile and easily persuasive nature. The trial court statement on which Rodgers bases his entire argument was: "With respect to the needs of the community, there is a need for protection from this conduct, and the aspect of protection and remorse go together in the sense of not even appreciating the seriousness of this offense, some recognition of the impact on these victims." In its order denying Rodgers's motion to modify his sentence, the trial court further explained the challenged comment: "[I]n the context of the entire sentencing proceedings, the intent of this statement is to point out that the defendant had no appreciation for the ordeal suffered by the victims. It was not intended as a reflection on his right to maintain his innocence." A trial court is permitted to consider a defendant's remorse as an additional sentencing factor. *Echols*, 175 Wis. 2d at 681-82, 499 N.W.2d at 640-41.

Given the trial court's explanation with respect to the reference, the fact that the trial court addressed the three primary factors, and the fact that a trial court can properly consider the additional factor of remorse, we cannot say that the trial court erroneously exercised its sentencing discretion.

*By the Court.*—Judgment and order affirmed.