COURT OF APPEALS
DECISION
DATED AND FILED

July 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP903-CR**

Cir. Ct. No. 2019CF380

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CYRUS A. ELWORTH,

DEFENDANT-APPELLANT.

APPEAL from judgment of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cyrus A. Elworth appeals a judgment of conviction for substantial battery and disorderly conduct, both by use of a dangerous weapon. The charges stemmed from an altercation Elworth had with his neighbor, Thomas,[1] who alleged that Elworth had beaten him with a stick on their shared porch. Elworth argues the circuit court erroneously exercised its discretion when it refused to admit two items into evidence at trial, both of which he argues were necessary to his self-defense claim: (1) a police report indicating that Elworth was not implicated in an earlier theft from Thomas; and (2) a portion of the 911 call in which Thomas could be heard saying that Elworth was "like the crazy bastard that stole my stuff" and was "off his meds." We conclude the circuit court did not erroneously exercise its discretion when it denied admission of those items. Accordingly, we affirm.

## BACKGROUND

¶2 Elworth was initially charged with attempted first-degree intentional homicide, substantial battery and disorderly conduct, each with a penalty enhancer for use of a dangerous weapon in the commission of the offense.[2] The charges arose from an altercation with Thomas, who lived in a different apartment in the same house as Elworth. Thomas told police that Elworth had attacked him from behind with a stick in the front porch area of the home and had beat him with it until Thomas was able to wrestle it away and escape.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20) and consistent with the parties' briefs, we use a pseudonym to refer to the victim. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] He was also charged with felony witness intimidation and resisting an officer. These charges are not relevant to this appeal and will not be discussed further. Moreover, the attempted homicide charge was ultimately dismissed prior to trial.

¶3 Elworth testified at trial that Thomas had attacked him first, and he used the stick in self-defense to prevent Thomas from choking him to death. In support of the notion that Thomas had a vendetta against Elworth that would cause him to falsely claim to be the victim, the defense filed a motion in limine seeking:

> 21. That the defense be allowed to question [Thomas] on cross-examination and, if necessary, admit additional evidence that Mr. Elworth did not previously steal items from [Thomas]. Pursuant to [WIS. STAT. § 906.08(2) and (3), *State v. Williamson*, 84 Wis. 2d 370, 267 N.W.2d 337 (1978), and *State v. Missouri*, 2006 WI App 74, 291 Wis. 2d 466, 714 N.W.2d 595, the evidence is admissible] as [it] goes to bias and prejudice of [Thomas].
>
> Specifically, on the day of the incident [Thomas] told the officers that in the fall of 2018, Mr. Elworth had stolen several items from [Thomas] and that he had been held accountable. [Thomas] told the police he has basically not interacted with Mr. Elworth since that incident. Fond du Lac Police Department report 18-6145 makes clear that [Thomas] was aware that Mr. Elworth was not implicated in the theft of his items. [Thomas] himself found his items at Kyle Blaha's house. Mr. Elworth was never charged in connection to any theft.
>
> …
>
> Here there is clear evidence that [Thomas] held a grudge against Mr. Elworth and that [Thomas] lied to the police about this past case on the date of this incident, as such Mr. Elworth should be allowed to explore this issue on cross-examination and potentially with witness rebuttal.

¶4 The circuit court addressed the motion in limine at a pretrial hearing. Specifically analyzing the admissibility issue through WIS. STAT. § 906.08,[3] the

---

[3] As relevant here, WIS. STAT. § 906.08(1) permits a party to offer reputation or opinion evidence of a witness's character for truthfulness or untruthfulness only after the witness's character has been attacked. Subsection (2), specifically cited in the defense motion, states that specific instances of the conduct of a witness for purposes of attacking or supporting the witness's character for truthfulness "may not be proved by extrinsic evidence," save for a conviction or delinquency adjudication.

court stated that the defense had "every right on cross-examination" to question Thomas regarding his false belief that Elworth had stolen tools from him, as that matter went to his character for truthfulness and to possible bias or prejudice against Elworth. However, the court stated it would "shut the door" at that point, and preclude the defense from introducing extrinsic evidence in response to Thomas's anticipated testimony, as "[t]hat's a step beyond and then we get into this whole mini trial thing." The court left open the possibility that it would reconsider its decision depending on what Thomas testified to.

¶5 During Thomas's direct examination, he testified he had no ill will toward Elworth prior to their altercation. On cross-examination, defense counsel began asking questions about Thomas's relationship with Elworth, at which time Thomas testified that he and Elworth "did have an issue" in 2018 that he had been told not to bring up. Thomas clarified that the "issue" to which he was referring was a theft in 2018, which he reported to law enforcement. The questioning continued:

> Q. And the very next day you discovered the items that were missing from you at a gentleman named Kyle Blaha's house; is that correct?
>
> A. Some of it was there and some of it the landlord got back from Cyrus.
>
> Q. Is—are you aware that law enforcement searched Mr. Elworth's house as part of that?

¶6 At that point, the State interposed a relevance objection, which was heard outside the jury's presence.[4] The court reviewed its notes from the pretrial

---

[4] During the break, the circuit court admonished Thomas that he was not to testify that he was told not to say something.

hearing and reminded the parties that it desired to avoid a mini-trial on the issue of whether Elworth had actually stolen Thomas's tools. The court again stated that while it would allow the testimony for impeachment purposes, it was uncertain of the defense's "bias or prejudice" argument. And the court gave the defense another opportunity to address the scope of the questioning.

¶7      Elworth proposed to ask Thomas two questions: whether he was aware (1) that Elworth's house had been searched by police and that none of Thomas's tools had been found; and (2) that Blaha's house had been searched, Thomas's tools were found there, and Blaha had been charged with the theft. The State argued this questioning was on a "collateral issue" of bias that the defense should not be allowed to explore.

¶8      In response, Elworth shifted away from the testimonial aspects of his offer of proof and suggested that "both in … the 911 call and … [Thomas's] written statement to law enforcement on the day of the event, [Thomas] makes this readily apparent as … a bias issue he has against Mr. Elworth." The circuit court again stated it did not want to get into a mini-trial on the issue of the stolen property, but it regarded Thomas's anticipated testimony on the matter as being relevant and not subject to exclusion under WIS. STAT. § 904.03. Accordingly, it overruled the State's objection to Elworth's line of questioning. However, the court stated it was "still not sure" about the notion that further evidence was admissible to demonstrate Thomas's bias or prejudice.

¶9      When the jury returned, Thomas was asked whether he was aware that law enforcement had searched Blaha's house and found Thomas's tools, that law enforcement had also searched Elworth's house and found nothing, and that Blaha was charged with the theft. Thomas responded affirmatively to each

question. Thomas also acknowledged that even though he was aware Blaha had been charged with the theft, he persisted in pressing his landlord to force Elworth to move out.

¶10    After some questioning about what Thomas said during the thirteen-minute 911 call he placed immediately after the altercation, Elworth suggested that the next day he wanted the jury to hear the entire call. The following day, outside the jury's presence, the circuit court summarized the contents of the call, most significantly Thomas's statements to the dispatcher and others present at the scene that Elworth was "like the crazy bastard that stole my stuff" and was "off his meds."

¶11    The circuit court regarded many of Thomas's statements during the extended 911 call as irrelevant and prejudicial. The court proposed that it would allow the jury to hear Thomas's initial description of the altercation to the 911 dispatcher, "but not anything about [Elworth] being off his meds or being on meds for mental problems." In response, Elworth suggested that "whether or not he thinks Mr. Elworth is crazy and off his meds does go to bias and prejudice of [Thomas] towards my client." The court then discussed various theories of admissibility, rejecting in particular the notion that Thomas's beliefs about Elworth's mental health established that Thomas had bias or prejudice toward Elworth so as to make his statements during the 911 call to that effect admissible. The court noted it had already allowed Elworth to go "into this whole theft thing … beyond a little bit where I allowed you to go with it in the pretrial ruling."

¶12    Elworth agreed with the circuit court that "whether or not Mr. Elworth is actually mentally ill isn't relevant or at issue in this trial." He urged the court, however, to admit the statements because "individuals can take

6

advantage of and dislike someone because they believe the person is mentally ill." The court rejected that rationale, reasoning that the mental health evidence was not relevant and that, even if it had minimal relevance, any probative value was substantially outweighed by the danger of unfair prejudice.

¶13 At the conclusion of cross-examination, Thomas persisted in his assertions that he had seen Elworth stealing his property and the landlord had discovered stolen property inside Elworth's apartment. Defense counsel again elicited that Thomas was aware Elworth had not been charged for the theft. Additionally, in response to further cross-examination, Thomas acknowledged that he had made sure after the attack to specifically mention to police that he believed Elworth had previously stolen from him. During redirect, Thomas testified he initially believed that Elworth was involved in the theft and harbored ill will toward Elworth, but he eventually "got over it" after "somebody gave [him] a different perspective on it and [he] took that into consideration."

¶14 Also during redirect, the prosecutor asked Thomas whether there was "any other reason in your relationship with Mr. Elworth that he could have done this to you?" Elworth objected and, outside the jury's presence, again requested that the circuit court admit the 911 call into evidence. The court remarked that though it thought that evidence now had more probative value, it would be "overkill" to admit the entire call. The court permitted Elworth to ask during recross whether Thomas had made a statement about the theft to law enforcement in the immediate aftermath of the attack, but it declined to allow further inquiry.

¶15 When the jury returned, Elworth questioned Thomas about his statements to law enforcement immediately following the attack. Thomas

answered affirmatively to defense counsel's question about whether he was "talking about this theft quite a bit" after the altercation. Among other things, Thomas acknowledged talking about the theft to neighbors as he waited for first responders, although he testified he was uncertain he had used the words "the bastard that stole my shit" when doing so.[5]

¶16 The jury found Elworth guilty of the substantial battery and disorderly conduct offenses. The circuit court ordered probation for the disorderly conduct, but sentenced Elworth to one and one-half years' initial confinement and two years' extended supervision on the battery count. Elworth now appeals, asserting the circuit court erroneously excluded the police report regarding the theft and the portions of the 911 call in which Thomas questioned Elworth's mental health.

## DISCUSSION

¶17 The admission of evidence is subject to the circuit court's discretion. *State v. Ringer*, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448. We will not reverse absent an erroneous exercise of discretion. *Id.* "We will not find an erroneous exercise of discretion if the trial court examined the relevant facts, applied a proper legal standard, and used a rational process to reach a reasonable decision." *State v. Rogers*, 203 Wis. 2d 83, 91, 552 N.W.2d 123 (Ct. App. 1996).

---

[5] Specifically, Thomas was asked, "And the first thing you said to the neighbor is, the bastard that stole my shit? That's who did this to you?" Thomas replied, "I don't know if I put it that way. I may have."

¶18 Elworth argues "[t]he circuit court's evidentiary rulings prevented Elworth from giving the jury a full picture of Thomas's biases against him."[6] He argues evidence of Thomas's "animosity" toward Elworth—as illustrated both by his theft allegations against Elworth and his statements about Elworth having a mental illness—was relevant, as it made it more probable that, consistent with Elworth's testimony, Thomas laid down the first blow, thereby casting doubt on the State's ability to disprove self-defense.

¶19 Elworth's arguments appear to encompass two specific items he wanted to have admitted at trial. First is the police report, which according to Elworth "illustrat[ed] that the police found the stolen items elsewhere," contrary to Thomas's belief that Elworth had stolen them. Second, Elworth argues he should have been allowed to present Thomas's statements during the 911 call regarding Elworth's mental health.

¶20 As an initial matter, Elworth criticizes the circuit court for applying an incorrect legal standard. He argues the circuit court misapplied WIS. STAT. § 906.08(2) when it restricted Elworth to testimonial inquiry and prohibited the use of extrinsic evidence in Thomas's impeachment. Instead, Elworth posits that the circuit court should have applied WIS. STAT. § 906.16, which states that evidence of witness bias is generally admissible.

¶21 Elworth's argument regarding the circuit court's application of WIS. STAT. § 906.08(2) might be persuasive had his own motion in limine not invited

---

[6] Elworth does not argue that his constitutional right to present a defense was affected by the circuit court's evidentiary rulings. Thus, we confine our analysis to whether the circuit court's decisions constituted an erroneous exercise of discretion.

the court to proceed under that statute. Elworth's invocation of that statute raises the issue of invited error. *See State v. Slater*, 2021 WI App 88, ¶40, 400 Wis. 2d 93, 968 N.W.2d 740. Moreover, our review of the record shows Elworth never directed the court to WIS. STAT. § 906.16, despite the court repeatedly stating that it was uncertain of Elworth's bias analysis.[7] Under these circumstances, we decline to hold that the circuit court applied an erroneous legal standard.

¶22 On the other hand, the State broadly attacks the significance of both the excluded police report and portions of the 911 call, asserting that any relevance goes only to Thomas's purported bias against Elworth and has no bearing on Elworth's self-defense claim. The State urges us to ignore Thomas's "tacked on self-defense arguments."

¶23 The distinction the State attempts to draw between these concepts is murky at best. Any potential bias Thomas might have had against Elworth could have affected his credibility, and therefore could have made it more likely that Elworth was telling the truth about how the altercation occurred. *See State v. Hurley*, 2015 WI 35, ¶81, 361 Wis. 2d 529, 861 N.W.2d 174 (holding a witness's credibility is always consequential to the determination of the action). After all, "[i]mpeaching the testimony of a witness tends to make the factual assertions of the witness less probable than they would be without the impeaching testimony." *Rogers v. State*, 93 Wis. 2d 682, 688, 287 N.W.2d 744 (1980). In this sense,

---

[7] We note WIS. STAT. § 906.16 was enacted in October 2017 by Wisconsin Supreme Court rule and became effective on January 1, 2018, well in advance of the motion hearing and trial in this case. *See* S. CT. ORDER 16-02A, § 12 (eff. Jan. 1, 2018). Moreover, outside of a general citation in Elworth's motion in limine to *State v. Williamson*, 84 Wis. 2d 370, 267 N.W.2d 337 (1978), *abrogated on other grounds by Manson v. State*, 101 Wis. 2d 413, 304 N.W.2d 729 (1981), Elworth did not direct the circuit court to any common law authority regarding bias that predated § 906.16's enactment.

credibility and self-defense are flip sides of the same coin under the circumstances here.

¶24    Moreover, the State dismisses the notion that Thomas's "alleged motivation to attack" is relevant to Elworth's self-defense claim. The State reasons that motive is not an element of self-defense and not something Elworth needed to put in issue to receive a self-defense instruction. Be that as it may, evidence of motive is generally admissible even though motive is not an element of most crimes. *State v. Wilson*, 2015 WI 48, ¶63, 362 Wis. 2d 193, 864 N.W.2d 52; *see also* *Kelly v. State*, 75 Wis. 2d 303, 318, 249 N.W.2d 800 (1977) ("Generally, evidence of motive should be admissible under the same standards of relevancy as other evidence."). For this reason, in addition to the State's strained distinction between self-defense and credibility, we reject the State's blanket assertion that any motive evidence is irrelevant to the issue of self-defense.

¶25    Even so, general assertions that a particular piece of evidence demonstrates a witness's bias are not enough to guarantee admissibility. "[E]ach item of evidence offered to discredit a witness 'must first pass the gauntlet of relevancy principles; but it may also be obnoxious to some principle of auxiliary policy which may after all exclude it." *Id.* at 688-89 (citation omitted). Accordingly, we examine each item Elworth sought to have admitted into evidence under this framework.

¶26    We first consider Thomas's statements during the 911 call regarding his assessment of Elworth's mental health. On appeal, Elworth argues those statements were relevant because they demonstrated that Thomas believed Elworth had a mental illness, and "many members of the public assume that 'people with mental illness are dangerous.'" The circuit court rejected this

11

rationale, and also expressed that even if the statements had minimal relevance, it would exclude them under WIS. STAT. § 904.03.[8]

¶27　We cannot conclude the circuit court erroneously exercised its discretion in refusing to admit Thomas's statements regarding any perceived mental illness. The problem begins with relevance, which is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. The relevance of Thomas's statements that Elworth was, among other things, a "crazy bastard" and "off his meds," is not readily apparent to the dispositive question at trial of who attacked first. After all, Elworth agreed with the circuit court that whether Elworth actually suffered from a mental illness was not a trial question.

¶28　Indeed, to demonstrate relevance, Elworth's brief cites numerous studies and reports regarding the stigma associated with mental illness and the victimization of those diagnosed with mental illness, including violent acts against them.[9] This suggests the jury would have needed other evidence—or, at a minimum, extended argument—to contextualize Thomas's statements during the

---

[8] WISCONSIN STAT. § 904.03 allows a circuit court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[9] These studies themselves hardly demonstrate that it was likely Thomas acted out of malice even if he did believe that Elworth was mentally ill. For example, Elworth cites "[o]ne study [that] showed that in a 10-week period soon after discharge from a psychiatric hospital, 15% were the victims of a violent crime." Elworth's brief merely presumes that this frequency of crimes against the mentally ill occurs because the general public regard the mentally ill as dangerous, without elucidating other potential explanations (such as that the mentally ill are a particularly vulnerable class of individuals).

911 call and demonstrate their relevance. And that situation is exactly what the circuit court sought to avoid when it repeatedly expressed disdain for the notion of a "mini trial." *See State v. Lindh*, 161 Wis. 2d 324, 363, 468 N.W.2d 168 (1991) ("If the bias evidence, taken as a whole, might have directed the jury's attention away from the case under consideration, it may be prejudicial.").

¶29 Turning to the police report and Thomas's statements during the 911 call about the prior theft, we note the circuit court's evidentiary decisions provided the jury with a sufficient evidentiary basis to determine whether Thomas's belief that Elworth had stolen from him played a role in how the altercation occurred. Based on the testimony presented, the jury was aware of the prior theft, that Thomas believed Elworth was involved, that police had investigated Elworth and absolved him of criminal responsibility, and that they had in fact pursued charges against another individual. Additionally, Thomas admitted to making comments about the theft in the immediate aftermath of the altercation, and he gave inconsistent answers about whether he continued to believe Elworth was involved. This testimony effectively undercut Thomas's direct-examination testimony that he bore no ill will toward Elworth.

¶30 Elworth urges that the excluded police report and 911 call were necessary to "more definitively prove that no items were found in his home, by the police or the landlord, and that Thomas's claims were unfounded." While these items were plainly relevant, it is unclear how this information would have materially aided Elworth's defense in light of Thomas's testimony. The circuit court could reasonably conclude that the slight probative value of that bias evidence was substantially outweighed by its cumulative nature and the strong likelihood of jury confusion: matters the circuit court plainly regarded as important when it expressed its concern that the case not become a mini trial about

whether Elworth had actually committed the theft from Thomas. *See* WIS. STAT. § 904.03; ***Lindh***, 161 Wis. 2d at 363 ("The trial court may exclude bias evidence if the very slight probative value of the evidence on the issue of bias fails to overcome its strong likelihood of confusion of the issues and undue delay.").

¶31 Elworth also asserts this court cannot affirm the circuit court's evidentiary determinations based on WIS. STAT. § 904.03, as the court did not engage in the balancing test contemplated by that statute. The record does not bear out this claim. The court at times quoted the pertinent § 904.03 language, including by specifically finding that "any probative value is substantially outweighed by the danger of unfair prejudice as far as … the comments that were made." Moreover, Elworth ignores that even when a court's analysis is seemingly incomplete, "we are obliged to search the record" to determine whether the court's discretionary act can be sustained. ***McCleary v. State***, 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). Here, the totality of the court's comments and analysis make clear that it applied a rational process and reached a reasonable conclusion based upon the facts and law before it.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14